**INTERNATIONAL AUDIOTEXT NETWORK, INC., Plaintiff–Appellant,**

v.

**AMERICAN TELEPHONE AND TELEGRAPH COMPANY, Defendant–Appellee.**

No. 1879, Docket 95–7128.

United States Court of Appeals, Second Circuit.

Argued June 16, 1995.

Decided Aug. 3, 1995.

---

with the EPA to coincide with the information contained in the phony logbook.

Jeffrey M. Schlossberg, New York City (Joel R. Dichter, Klein Zelman, Briton, Rothermel & Dichter, of counsel), for plaintiff-appellant.

Elizabeth M. Sacksteder, New York City (Sidley & Austin, of counsel), for defendant-appellee.

Before: WINTER, MAHONEY, and JACOBS, Circuit Judges.

PER CURIAM:

Plaintiff-appellant International Audiotext Network, Inc. ("IAN") filed a complaint against defendant-appellee American Telephone and Telegraph Company ("AT&T") in the United States District Court for the Southern District of New York (McKenna, J.), alleging, among other claims, violations of Sections 1 and 2 of the Sherman Act, 15 U.S.C. §§ 1, 2. Plaintiff's appeal relates solely to these Sherman Act claims. After limited pre-answer discovery conducted pursuant to a stipulation and order, AT&T filed a motion to dismiss the complaint for failure to state a claim, pursuant to Fed.R.Civ.P. 12(b)(6). The district court, in a thorough opinion dated December 14, 1994, granted the motion. *International Audiotext Network, Inc. v. American Telephone & Telegraph Co.*, 893 F.Supp. 1207 (S.D.N.Y.1994).

Final judgment having been entered and a timely notice of appeal filed, we have jurisdiction to hear the appeal. After careful consideration of the arguments advanced by the parties, we affirm.

IAN is engaged in the telecommunications industry as an information provider ("IP"). As such, IAN provides audiotext services via telephone, including such information as stock quotes, sports scores, time, weather reports, and horoscopes. IPs may derive revenue for audiotext services in several ways. One way is for the IP to require callers to charge the cost of the service to a credit card, ordinarily at the outset of the call. Another means of collecting charges is to set up a special number with the long-distance carrier. Under this arrangement, the IP levies either a per-minute charge or a flat fee for the call, the long-distance carrier bills the caller accordingly and forwards the balance (net of handling charges) to the IP. The collection method that IAN desires to use in this case entails an agreement between the IP and the long-distance carrier to split the revenue paid to the carrier, by phone companies in the originating countries, for transmitting the long-distance calls to the IP. Thus the caller abroad pays only the regular cost of the long-distance call. For certain low-cost services, an arrangement that involves no extra charges to the caller offers a competitive advantage.

The complaint alleges that AT&T is the nation's dominant long-distance carrier as a result of its former monopoly position, and that for the same reason AT&T dominates the market for international telephone calls originating or terminating in the United States. In 1991 AT&T carried approximately 70.8 percent of such calls. In respect of in-bound telephone traffic to the United States, AT&T enters into individual agreements with foreign telephone companies, undertaking to accept calls originating in those countries, carry the calls over its long-distance lines, and terminate them at the desired destination in the United States. For this service, AT&T charges a fee to the foreign telephone company; that fee is a component of the price of the call billed to the caller by the foreign company, which then remits to AT&T the amount owed for AT&T's services. AT&T's U.S. competitors for the domestic handling of calls originating abroad have similar arrangements in many countries.

In 1991, AT&T entered into an agreement (the "Agreement") with Malhotra & Associates, Inc., which is an IP. Under the Agreement, Malhotra undertook to "stimulate" international telephone traffic over AT&T's lines by promoting its audiotext services to international callers, who access Malhotra's services by dialing Malhotra's telephone numbers in the United States. Because AT&T receives a fee for in-bound telephone traffic on its international long-distance lines, AT&T's revenues are increased by the incremental telephone traffic generated by Malhotra. The Agreement was initially limited to four countries, but was expanded in scope to cover at least 120 countries. The Agreement provides that Malhotra will receive a commission for each international call to Malhotra that is delivered via AT&T's lines; that commission is calculated as a share of the revenues AT&T receives for the telephone traffic, which varies depending on the fee that each country's telephone company pays to AT&T.

IAN would like to enter what it characterizes as the international market for American audiotext services, and it unsuccessfully approached AT&T with a business proposal that, as it happens, is similar to the arrangement AT&T has with Malhotra. After being rebuffed by AT&T, IAN discovered that AT&T had a deal with Malhotra that was substantially similar to what it was seeking, and filed this lawsuit, alleging that AT&T's refusal to contract with IAN violates federal antitrust law. The district court has granted AT&T's motion to dismiss pursuant to Fed. R.Civ.P. 12(b)(6), and entered judgment dismissing the complaint in its entirety. IAN now appeals that dismissal.

We review *de novo* the district court's 12(b)(6) dismissal of the complaint and, "taking all the plaintiff's factual allegations as true, we will affirm only where no set of facts could support [its] claim." *Annis v. County of Westchester, New York*, 36 F.3d 251, 253 (2d Cir.1994) (citing *Christ Gatzonis Elec. Contractor, Inc. v. New York City*

*Const. Auth.*, 23 F.3d 636, 639 (2d Cir.1994)). "[T]he complaint is deemed to include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference." *Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 47 (2d Cir.1991), *cert. denied*, 503 U.S. 960, 112 S.Ct. 1561, 118 L.Ed.2d 208 (1992). Moreover, "when a plaintiff chooses not to attach to the complaint or incorporate by reference a [document] upon which it solely relies and which is integral to the complaint," the court may nevertheless take the document into consideration in deciding the defendant's motion to dismiss, without converting the proceeding to one for summary judgment. *Id.* at 47–48.

■ Although the amended complaint in this case does not incorporate the Agreement, it relies heavily upon its terms and effect; therefore, the Agreement is "integral" to the complaint, and we consider its terms in deciding whether IAN can prove any set of facts that would entitle it to relief. In so doing, we are not constrained to accept the allegations of the complaint in respect of the construction of the Agreement, although—at this stage in the proceedings—we will strive to resolve any contractual ambiguities in IAN's favor. *See Doe v. City of New York*, 15 F.3d 264, 266 (2d Cir.1994) (on review of 12(b)(6) dismissal, reviewing court will "draw all reasonable inferences in favor of[ ] the non-moving party").

■ IAN's first and second causes of action allege, respectively, that AT&T has engaged in a monopoly and that AT&T has attempted to engage in a monopoly, in violation of section 2 of the Sherman Antitrust Act, which makes it unlawful for any person to "monopolize, or attempt to monopolize, or combine or conspire with any other person or persons, to monopolize any part of the trade or commerce among the several States...." 15 U.S.C. § 2. IAN's third cause of action alleges that AT&T has violated section 1 of the Sherman Act, which prohibits "contract[s], combination[s] ... or conspirac[ies], in restraint of trade or commerce." 15 U.S.C. § 1. Each of these claims is premised on the contention that AT&T has abused its dominant position in the market for international telephone calls to the United States (which, at 70.8 percent, is presumed at this stage in the proceedings to constitute control over the market) in order to prevent IAN from offering its audiotext services to prospective customers in foreign countries. According to IAN, this is being done either to preserve AT&T's monopoly in the market for international audiotext services, or in an attempt to monopolize that market, or to protect Malhotra's position in that market.

Regarding the monopolization claim, the district court noted that this claim is based upon IAN's contention that AT&T is depriving it of access to an essential facility. However, with respect to the essential facilities doctrine, this case does not involve a facility to which IAN seeks access (and for which IAN would be willing to pay). *See, e.g., Twin Laboratories, Inc. v. Weider Health & Fitness*, 900 F.2d 566, 569 (2d Cir.1990) (involving advertising space in a magazine and collecting cases involving power lines, sports arenas, newspaper advertisements, and a mountain). Rather, IAN seeks an arrangement by which AT&T would agree to *pay* IAN and all competitors money for what are essentially advertising or promotional services. The essential facility doctrine does not extend this far. We have carefully considered all arguments put forward by IAN in support of its claims and we affirm the dismissal of the complaint for substantially the reasons stated in the district court's opinion. *See International Audiotext*, 893 F.Supp. 1207.