**HINDS COUNTY, MISSISSIPPI,**
Plaintiff,

v.

**WACHOVIA BANK N.A.,**
et al., Defendants.

**In re Municipal Derivatives
Antitrust Litigation.**

No. 08 Civ. 2516.
No. 08 MDL 1950.

United States District Court,
S.D. New York.

July 10, 2013.

Jeffrey B. Gittleman, Barrack, Rodos & Bacine, Philadelphia, PA, Roland Gustaf Riopelle, Sercarz & Riopelle, L.L.P., Arun Srinivas Subramanian, Susman Godfrey LLP, Magda Maria Jimenez, Boies, Schil-

ler & Flexner, LLP, Seth D. Ard, Susman Godfrey LLP, New York, NY, David R. Woodward, Heinrichson, Siegel, P.L.L.C., Jack A. Simms, Jonathan M. Shaw, Matthew Friedrich, Tanya S. Chutkan, William A. Isaacson, Boies, Schiller & Flexner LLP, Washington, DC, Dylan J. McFarland, Vincent J. Esades, Heins Mills & Olson, P.L.C., Minneapolis, MN, Erica W. Harris, Susman Godfrey LLP, Houston, TX, Eugene A. Spector, William G. Caldes, Spector, Roseman & Kodroff Willis, P.C., Philadelphia, PA, Michael E. Moskovitz, Freed Kanner London & Millen LLC, Bannockburn, IL, Precious Tyrone Martin, Office of Assemblyman Richard Brodsky, Elmsford, NY, for Plaintiff.

## DECISION AND ORDER

VICTOR MARRERO, District Judge.

On January 7, 2013, Plaintiff Utah Housing Corporation ("UHC") filed a second amended complaint (the "SAC"), alleging federal and state antitrust violations against Defendants Transamerica Life Insurance Company, Transamerica Life Insurance and Annuity Company (collectively, "Transamerica") and others arising out of an alleged unlawful conspiracy to illegally rig bids, fix prices, and manipulate the market for investment instruments known as municipal derivatives, in violation of § 1 of the Sherman Antitrust Act, 15 U.S.C. § 1 ("§ 1"); the Utah Antitrust Act, Utah Code § 76–10–911, et al.; and the Utah Unfair Practices Act, Utah Code § 13–5–1, et al.

Transamerica moves to dismiss UHC's claims under Federal Rule of Civil Procedure 12(b)(6) ("Rule 12(b)(6)"), asserting that the SAC fails to state a claim upon which relief may be granted.

This Court previously granted two motions to dismiss in this multi-district litigation brought by, among others, Transamerica, determining that certain plaintiffs presented insufficient factual allegations to raise a plausible inference that the particular bids at issue were the product of anticompetitive activity in the municipal derivatives market. *See Hinds Cnty., Miss. v. Wachovia Bank N.A.*, 708 F.Supp.2d 348, 361 (S.D.N.Y.2010) (*"Hinds Cnty. IV"*); *see also Hinds Cnty., Miss. v. Wachovia Bank N.A.*, 790 F.Supp.2d 106, 110 (S.D.N.Y.2011) (*"Hinds Cnty. V"*).

## I. BACKGROUND [1]

From 1999 to 2003, UHC purchased Guaranteed Investment Contracts ("GICs") in connection with the issuance of bonds which financed affordable housing for first-time homebuyers with low to moderate incomes. In order to purchase a GIC, UHC must, pursuant to Internal Revenue Service regulations, conduct an auction with at least three bidders in order to obtain the highest possible interest rate. Defendants, in these roles, allegedly en-

---

**1.** The facts below are taken from the SAC filed on July 7, 2011, and the documents cited or relied upon for the facts pled therein, which the Court accepts as true for the purposes of ruling on a motion to dismiss. *See Spool v. World Child Int'l Adoption Agency,* 520 F.3d 178, 180 (2d Cir.2008) (*citing GICC Capital Corp. v. Technology Fin. Group, Inc.,* 67 F.3d 463, 465 (2d Cir.1995)). A court may take into account any written instrument attached to the complaint, as well as statements and documents "incorporated in [the complaint] by reference" without converting a motion to dismiss into one for summary judgment. *Chambers v. Time Warner, Inc.,* 282 F.3d 147, 152 (2d Cir.2002) (internal quotations omitted). "Even where a document is not incorporated by reference, the court may nevertheless consider it where the complaint 'relies heavily upon its terms and effect,' which renders the document 'integral' to the complaint," *Id.* at 153 (*quoting International Audiotext Network, Inc. v. American Tel. & Tel. Co.,* 62 F.3d 69, 72 (2d Cir.1995)). Except where specifically quoted, no further reference to the SAC will be made.

gaged in a conspiracy to rid bids and fix prices in both the municipal derivates markets generally and the UHC GIC auctions.

UHC has alleged that Transamerica submitted rigged bids in four UHC auctions where the spread between the high bid and Transamerica's bid was 100 basis points or more: (a) UHC's February 6, 2001 auction for its Single Family Mortgage Bonds, 2001 Series A, where Transamerica's bid was 162 basis points below the high bid; (b) UHC's November 7, 2001 auction for its Single Family Mortgage Bonds, 2001 Series F, where Transamerica's bid was 100 basis points below the high bid; (c) UHC's August 2, 2002 auction for its Single Family Mortgage Bonds, 2002 Series E, where Transamerica's bid was 150 basis points below the high bid; and (d) UHC's January 24, 2003 auction for its Single Family Mortgage Bonds, 2003 Series A, where Transamerica's bid was 100 basis points below the high bid.

## II. *LEGAL STANDARD*

Under Rule 12(b)(6), a complaint should be dismissed if the plaintiff has not offered sufficient factual allegations that render the claim plausible. *See Ashcroft v. Iqbal,* 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009). The complaint should not be dismissed if the factual allegations "raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). The role of a court in ruling on a motion to dismiss is to "assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof." *In re Initial Pub. Offering Sec. Litig.,* 383 F.Supp.2d 566, 574 (S.D.N.Y.2005) (internal quotation marks omitted). A court must accept all well-pleaded factual allegations in the complaint as true, and draw all reasonable inferences in the plaintiff's favor. *See Chambers v. Time Warner, Inc.,* 282 F.3d 147, 152 (2d Cir.2002).

## III. *DISCUSSION*

### A. *§ 1 of the Sherman Act*

This Court has previously held that "where a municipal derivative transaction involved a spread between low and high bids that was greater than 100 basis points, statistical analysis raises a plausible inference that the entities that submitted those low and high bids participated in the alleged conspiracy." *Hinds Cnty. V,* 790 F.Supp.2d at 115 (*citing Hinds Cnty. IV,* 708 F.Supp.2d at 361).

■ In its motion to dismiss, Transamerica argues that the bids identified by UHC are only one part of a two-part bid and that, when the two parts of the bid are viewed as a whole, the bid spread between Transamerica's bid and the winning bid is less than 100 basis points. Specifically, Transamerica notes that, in each of the four auctions at issue, UHC solicited bids on two different funds—a primary acquisition fund and an accompanying float fund. It states that, in each of the auctions at issue, UHC awarded both the acquisition fund and the float fund to the provider with the best overall bid, even where the provider did not submit the high bid on both funds. Further, Transamerica states that the four Transamerica bids identified by UHC were only Transamerica's float fund bids and that Transamerica conditioned its overall bid so that it would only accept an award of the float fund if it also won the primary acquisition fund. Therefore, Transamerica argues, the Court should view its acquisition fund bid and its float fund bid in each auction together. When viewed as a whole, Transamerica argues its collective bid falls below the 100 basis point threshold.

However, UHC notes that, in similar UHC auctions, the acquisition fund and the float fund have been awarded to separate bidders as evidence that the two bids constituted separate transactions. For example, in a 2003 auction for its Single Family Mortgage Bonds, 2003 Series D, the acquisition fund was awarded to Transamerica while the float fund was awarded to AIG. *See* Decl. of Cleon P. Butterfield at Ex. 1E, Mar. 8, 2013, Dkt. No. 1762. UHC has also alleged facts indicating that Transamerica was aware of the separate character of the funds and the bids. *See* SAC ¶ 17, July 7, 2011, Dkt. No. 1532. For example, Transamerica placed various conditions on its bids indicating it would not accept the float fund unless it was also awarded the acquisition fund. *See* Decl. of Cleon P. Butterfly at Ex. 1A, Mar. 8, 2013, Dkt. No. 1762. Further, the funds matured over different durations and had different purposes making it difficult to look at both bids as a single transaction. *See* Decl. of Cleon P. Butterfly at Ex. 1B, Mar. 8, 2013, Dkt. No. 1762. Finally, although both bids were submitted simultaneously, the contracts on the winning bids were separately awarded, contradicting Transamerica's argument. *Id.* At this stage of the case, UHC has sufficiently alleged that the float fund bids and the acquisition fund bids constituted separate transactions. *See Twombly*, 550 U.S. at 545, 127 S.Ct. 1955.

UHC has identified four auctions where the spread between the winning bid and Transamerica's bid on the float fund exceeded 100 basis points. This alone presents sufficient evidence in light of the previous decisions of this Court to defeat a motion to dismiss. *See Hinds Cnty. IV,* 708 F.Supp.2d at 361; *see also Hinds Cnty. V,* 790 F.Supp.2d at 110 (S.D.N.Y. 2011).

Therefore, since the Court applies the same standard already stated in *Hinds County IV* and *Hinds County V,* the Court finds here that UHC raises a plausible inference that Transamerica submitted these float fund bids as a participant in the alleged conspiracy and the claims therefore survive Transamerica's motion to dismiss. *See Hinds Cnty. IV,* 708 F.Supp.2d at 360; *see also Hinds Cnty. V,* 790 F.Supp.2d at 110.[2]

## B. State Law Claims

The Utah Antitrust Act provides: "[e]very contract, combination in the form of trust or otherwise, or conspiracy in restraint of trade or commerce is declared to be illegal." Utah Code § 76–10–914. Similarly, the Utah Unfair Practices Act prevents "an individual, a corporation, a partnership, an association, a joint stock company, a business trust or any unincorporated organization," Utah Code § 13–5–2, "from using unfair methods of competition in commerce or trade." Utah Code § 13–5–2.5. UHC's state law claims proscribe the same anticompetitive activities as Section 1 of the Sherman Act. *See* Utah Code § 76–10–926 ("Utah antitrust laws are generally to be construed in harmony with the federal antitrust scheme.") Therefore, since this Court has concluded that UHC has sufficiently alleged a § 1 claim against Transamerica, its claims under the Utah Antitrust Act and the Utah Unfair Practices Act also survive Transamerica's motion to dismiss.

**2.** Because this Court has held that UHC's allegations identifying four transactions in which the bid spread between Transamerica's bid and the winning bid exceeded 100 basis points sufficiently satisfies the standard on a motion to dismiss, it need not address Transamerica's second argument that allegations that it participated in separate transactions involved in pending criminal investigations by the Department of Justice is insufficient evidence to state a § 1 claim.

## IV. *ORDER*

For the reasons discussed above, it is hereby

**ORDERED** that the motion (Dkt. No. 1750) of defendants Transamerica Life Insurance Company and Transamerica Life Insurance and Annuity Company to dismiss the Second Amended Complaint is **DENIED.**

**SO ORDERED.**