13-1379-cv
Henry Heckman v. Town of Hempstead, et al.

UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT

## SUMMARY ORDER

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated Term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York on the 3rd day of June, two thousand fourteen.

PRESENT:    DENNIS JACOBS,
            GUIDO CALABRESI,
            ROSEMARY S. POOLER,
                            *Circuit Judges*.

_____

HENRY HECKMAN,

     *Plaintiff-Appellant*,

     -v.-                                      13-1379-cv

THE TOWN OF HEMPSTEAD, RAYMOND SCHWARTZ, as Supervisor of Inspection Services for the Town of Hempstead, personally, BUILDING INSPECTOR FOR THE TOWN OF HEMPSTEAD, JOHN DOE #2, personally, BUILDING INSPECTOR FOR THE TOWN OF HEMPSTEAD, JOHN DOE #3, personally, BUILDING INSPECTOR FOR THE TOWN OF HEMPSTEAD, JOHN DOE #4, personally, ROY GUNTHER, Building Inspector for the Town of Hempstead, personally, RALPH VALLAREVELLA, Code Enforcement Officer for the Town of Hempstead, personally, ROBERT STEPPE, Code Enforcement Officer for the Town of Hempstead, personally, GLENN FORDSMAN, Code Enforcement Officer for the Town of Hempstead, personally, SAL MASTRACCHIO, Town of Hempstead Building Department Trainee, personally, TOM BOVE, Town of Hempstead Water Department Employee, personally,

     *Defendants-Appellees*,

POLICE OFFICER JOHN DOE #1, personally, NASSAU
COUNTY, POLICE OFFICER RAMOS, POLICE
OFFICER MICHAEL KEANE, personally,

*Defendants*.

_____

APPEARING FOR APPELLANT:   Michelle Caldera-Kopf (William M. Brooks, *on the brief*),
Mental Disability Law Clinic, Touro College, Jacob D.
Fuchsberg Law Center, Central Islip, New York.

APPEARING FOR APPELLEES:   Donna A. Napolitano (Daniel J. Evers, *on the brief*),
Berkman, Henoch, Peterson, Peddy & Fenchel, P.C.,
Garden City, New York.

Appeal from the United States District Court for the Eastern District of New York (Feuerstein, *J.*).

**ON CONSIDERATION WHEREOF, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment of said District Court be and it hereby is **AFFIRMED** in part and **VACATED** and **REMANDED** in part.

Henry Heckman appeals from a final judgment of the United States District Court for the Eastern District of New York (Feuerstein, *J.*), dismissing his federal claims with prejudice pursuant to Federal Rule of Civil Procedure 12(c), and declining to assert supplemental jurisdiction over his state law claims. We assume the parties' familiarity with the underlying facts, the procedural history, and the issues presented for review.

We review *de novo* the district court's decision to grant a Rule 12(c) motion for judgment on the pleadings, employing the same standard as when deciding a Rule 12(b)(6) motion for failure to state a claim. "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted). We construe all factual allegations in the complaint as true and "draw[] all reasonable inferences in the plaintiff's favor." *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007). In its review, the Court is entitled to consider facts alleged in the complaint and documents attached to it or incorporated in it by reference, documents "integral" to the complaint and relied upon in it, and facts of which judicial notice may properly be taken under Rule 201 of the Federal Rules of Evidence. *See, e.g.*, *Rothman v. Gregor*, 220 F.3d 81, 88 (2d Cir. 2000); *Audiotext Network, Inc. v. Am. Tel. & Tel. Co.*, 62 F.3d 69, 72 (2d Cir. 1995).

"[I]t is the usual practice upon granting a motion to dismiss to allow leave to replead[.]" *Cortec Indus., Inc. v. Sum Holding, L.P.*, 949 F.2d 42, 50 (2d Cir. 1991). The amendment

process has its limits, of course, so it is for the district court to decide in the first instance whether to grant leave to amend, and we generally review only for abuse of discretion. *Hutchison v. Deutsche Bank Sec., Inc.*, 647 F.3d 479, 490 (2d Cir. 2011). However, if "the denial of leave to amend is based on a legal interpretation, . . . [we] conduct[] a *de novo* review." *Id.* (citation omitted).

This action arises out of a decision by the Town of Hempstead Building Department to declare Heckman's residence "unfit for human occupancy" without providing him notice and an opportunity to be heard in advance. The facts recounted here are drawn from the allegations of Heckman's pleadings and are assumed to be true for present purposes.

Heckman is a disabled veteran who suffers from post-traumatic stress disorder and obsessive compulsive disorder. He experiences disordered thinking, insomnia, and an inability to concentrate on and complete even basic tasks. He depends on his sister to manage his personal and financial affairs. Moreover, these mental disabilities allegedly contribute to Heckman's "lack of fine motor skills" and an aversion to "part[ing] with certain objects." Proposed 2d Am. Compl. ¶¶ 35, 37. As a result, Heckman alleges he has "difficulty" "maintaining his home[,]" which appears "cluttered." *Id*. In short, he is a hoarder.

On December 20, 2007, Heckman arrived home to find it being boarded up by officials of the Town of Hempstead ("the Town") and its various public safety agencies (collectively, "Defendants"). Defendants had been called to the residence by police officers who, in the course of investigating a reported shooting in the neighborhood, supposedly "smelled gas coming from Mr. Heckmann's [sic] property." 2d Am. Compl. ¶¶ 27, 28. The officials did not permit Heckman to enter his house for any reason: neither to retrieve his money from his home; nor to retrieve his medication from his home; nor to "rescue his cat." *Id.* ¶¶ 46, 48. Apparently fearing arrest if he continued to protest the boarding of his house, Heckman traveled three hours to the Veteran's Administration to obtain an emergency supply of his medication, and passed the night in a motel. *Id.* ¶¶ 55, 57, 58. The next day, Heckman went to the Town's "Department of Buildings," where "Raymond Shwarz [sic]," the Town's Supervisor of Inspection services, gave Heckman a "handwritten list of vague alleged problems to be corrected within the house," and returned Heckman's house keys. *Id.* ¶¶ 59, 60, 65. Returning to his house, Heckman discovered the cat inside; however the gas, heat, electricity and water were not turned back on. *Id.* ¶¶ 69, 70. "To date, the 'unfit for human occupancy' designation has not been lifted." *Id*. ¶ 96.

I.      Heckman's Claim under the ADA

As to Heckman's claim under Title II of the ADA: "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. To establish a *prima facie* case under the ADA, Heckman "must demonstrate (1) that []he is a qualified individual with a disability; (2) that the defendants are subject to [the ADA]; and (3) that []he was denied the opportunity to participate in or benefit from defendants' services, programs, or activities, or was otherwise discriminated against by defendants, by reason of her disability." *Harris v. Mills*, 572 F.3d 66,

3

73-74 (2d Cir. 2009). None of Heckman's numerous pleadings (including the Complaint, First Amended Complaint, Proposed Second Amended Complaint, and Second Amended Complaint) or any supporting submissions filed here and below, alleges facts that give rise to a plausible inference that any of the defendants intentionally discriminated against him on the basis of his disability.

Heckman alleges that, when Defendants entered his home to investigate the suspected gas leak, they "cursorily observed the [home's] clutter, and concluded that the plaintiff was mentally incompetent." Appellant's Reply Br. 3; *accord* Proposed 2d Am. Compl. ¶¶ 35, 49. He further alleges that, "[a]fter concluding that the defendant was mentally incompetent, defendants further concluded that the plaintiff would not be able to comply with any proposed plan for remediation of any perceived defects in [his] home." Proposed 2d Am. Compl. ¶ 50.

These allegations do not suggest a plausible inference that any defendant knew or believed, at the relevant time, that Heckman suffered from a disability. Allegations that Defendants knew of Heckman's alleged disability because they had "concluded" as much based on the "clutter" are of a purely "conclusory nature," which "disentitles them to the presumption of truth." *Iqbal*, 556 U.S. at 681.

Accordingly, and finding no merit in Heckman's other arguments regarding his disability, we conclude that Heckman has failed to state a claim under the ADA. In light of Heckman's various opportunities to replead and the district court's careful analysis of the pleadings, proposed pleadings, and non-pleading submissions, the decision to deny as futile leave to amend was no abuse of discretion.

II. Heckman's Procedural Due Process Claim

The Fourteenth Amendment prohibits a state from "depriv[ing] any person of life, liberty, or property, without due process of law . . . ." U.S. Const. amend. XIV, § 1. Due process requires that before state actors deprive a person of property, they offer a meaningful opportunity to be heard. *See Armstrong v. Manzo*, 380 U.S. 545, 552 (1965). In an emergency situation "a state may satisfy the requirements of procedural due process merely by making available 'some meaningful means by which to assess the propriety of the State's action at some time after the initial taking.'" *WWBITV, Inc. v. Vill. of Rouses Point*, 589 F.3d 46, 50 (2d Cir. 2009) (quoting *Parratt v. Taylor*, 451 U.S. 527, 539 (1981)). "Where there is an emergency requiring quick action and where meaningful pre-deprivation process would be impractical, the government is relieved of its usual obligation to provide a hearing, as long as there is an adequate procedure in place to assess the propriety of the deprivation afterwards." *Id.*

At the pleading stage, then, a plaintiff must provide factual allegations that permit a plausible inference that (1) the relevant official(s) lacked "competent evidence . . . to reasonably believe" that an emergency existed; or (2) that an official's decision to invoke an emergency procedure was "arbitrary or amount[ed] to an abuse of discretion"; or (3) that a state's post-deprivation remedies are somehow inadequate. *Catanzaro v. Weiden*, 188 F.3d 56, 63 (2d Cir. 1999); *see also WWBITV, Inc.*, 589 F.3d at 50. Bound as we are at this stage in the litigation to

4

"draw[] all reasonable inferences in the plaintiff's favor," *ATSI Commc'ns, Inc.,* 493 F.3d at 98, we conclude that Heckman has alleged two plausible grounds on which he might maintain a procedural due process claim going forward.

        A.     Emergency

Heckman's pleadings sufficiently raise the inference "that no emergency existed at the time of [] [D]efendants' declaration that [his] home was unfit for human occupation." Appellant's Br. 14. The Magistrate's Report and Recommendation on this issue with respect to the Second Amended Complaint (which was accepted by the district court in its entirety), reiterated the conclusions of the first Report and Recommendation, which noted as follows:

> [The First Amended Complaint] suggests that there were *indicia* that emergency action on the part of the Town may have been necessary: the detection of a possible gas leak by the police officers, various possible building code violations, and the plaintiff's own acknowledgment regarding his inability to part with items and the resulting 'cluttered' appearance of his home.

*Heckman v. Town of Hempstead*, No. 10-5455 (SJF) (GRB), Report & Recommendation of Magistrate Judge (E.D.N.Y. Feb. 11, 2013), at *7 (citation omitted). The Magistrate's Report found that "[t]he only substantive changes in the current incarnation of the complaint" referred to "best practice procedures for gas leaks[,]" and concluded that these were insufficient to cure any deficiencies in Heckman's prior pleadings. Id. at *8.

The Magistrate's characterization of the Second Amended Complaint is incorrect. Heckman's Second Amended Complaint adds two allegations: that Schwartz conceded to Heckman's sister, Barbara Eaton, on January 7, 2008, that "the Town could have sent a letter giving [Heckman] a specific time within which to comply with the demands of the Town"; and that Schwartz conceded that "Town employees would not have taken the action that they did if they believed that the house had been occupied." *Compare* 2d Am. Compl. ¶ 76 (prior notice), *and id.* ¶ 78 (house unoccupied), *with* 1st Am. Compl. ¶ 83 (noting only a December 21, 2007 phone call between Schwartz and Eaton).

These two additional allegations, if true, plausibly allege that the relevant Defendants did not "reasonably believe" that an emergency situation obtained at the time that Defendants boarded up Heckman's house. Schwartz's first statement to Eaton literally concedes as much, and had the procedure described by Schwartz been followed it might have put the Town in compliance with its obligations regarding vacating dangerous structures. And Schwartz's second statement, implying that the Town only began boarding up the house on the assumption that it was uninhabited, read in the light most favorable to Heckman, suggests that concerns other than an emergency posed by the structure to Heckman or others motivated the decision to board up Heckman's residence. The Town and the Defendants will have the opportunity at later stages in this proceeding to adduce evidence attesting to whatever imminently dangerous emergency conditions they believed justified boarding up Heckman's house without notice, and causing all utilities to the house to be discontinued indefinitely. *See* Building Code § 90-1 (listing

dangerous conditions which include, *inter alia*, various structural deficiencies or buildings that are a "nuisance to the general public."); Building Code § 90-15 (allowing a building inspector to order the immediate vacation of a building "where it reasonably appears that there is imminent danger to the life or safety of any person"); *see also Cantanzaro*, 188 F.3d 63-64 (concluding that, at summary judgment, the "undisputed evidence" of structural damage to a building as a result of a car accident, combined with the short time frame in which the defendant town officials ordered its demolition, supported the conclusion that defendants were entitled to summary judgment as to plaintiff's due process claim).

B.    Post-Deprivation Process

In his challenge to the post-deprivation procedure, Heckman alleges that he was provided only a note, handwritten on a piece of scrap paper, stating in a perfunctory manner some purported violations of the Town's Housing and Rehabilitation Code. Moreover, he alleges that he was never informed of his right under the Code to request a hearing to contest those alleged violations. *See* Building Code § 88-3(B).

Defendants disclaim any statutory or constitutional obligation to "inform every citizen of their rights under the publicly available [] Code." Appellee's Br. 37. The Code, however, does impose such an obligation on the Manager of the Building Department. *See* Building Code § 88-3(A) (requiring that notice of any violations of the Code "shall . . . [s]et forth the procedure rights [for contesting the allegations by hearing] as outlined in § 88-3(B)"). While remedial action may be ordered without notice or hearing in an emergency, *see id.* § 88-3(E), Heckman's allegations raise a plausible inference that the violations that he was ultimately ordered to remedy were not sufficiently relevant to an ongoing emergency (i.e., the Town's remedial action on December 20, 2007 was sufficient to neutralize the emergency).[1] If that were proven, the Town might be held to its self-imposed notice requirements—particularly in light of Heckman's allegations that he repeatedly expressed specific objections to the alleged Code violations to housing authorities in the days and weeks following the condemnation of his house.

---

[1] Indeed, the housing authorities are alleged to have allowed Heckman to return to and sleep in his home notwithstanding its status as "unfit for human occupancy." Appellant's Reply Br. 11. Moreover, he was given a significant amount of time to fix the alleged Code violations, suggesting at least that the Town's actions had ended the emergency such that formal notice of his post-deprivation remedies could be provided. *Compare* Building Code § 88-3(E) ("Any party to whom [an emergency] order is directed shall comply therewith immediately. If such party is not available or does not respond with sufficient promptness to meet the emergency, then the Manager of the Building Department shall have the power to correct the emergency[.]"), *with* Building Code § 88-3(A)(3), (4) (providing, in non-emergency situations, for service of formal notice on an owner, "[a]llow[ing] a reasonable time for the performance of any act it requires").

For the foregoing reasons, we hereby **AFFIRM** the dismissal with prejudice of Heckman's ADA claim, but **VACATE** the dismissal of his due process claim. Accordingly, we **REMAND** to the district court for proceedings consistent with this order.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk