17-2135
Martin v. Quartermain

UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT

SUMMARY ORDER

RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION
TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED
AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS
COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT
FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX
OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A
PARTY CITING TO A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY
NOT REPRESENTED BY COUNSEL.

At a stated term of the United States Court of Appeals
for the Second Circuit, held at the Thurgood Marshall United
States Courthouse, 40 Foley Square, in the City of New York,
on the 1st day of May, two thousand eighteen.

PRESENT:
        DENNIS JACOBS,
        RICHARD C. WESLEY,
        DEBRA ANN LIVINGSTON,
            Circuit Judges.
_____

GARY MARTIN, SANDRA LEE REYES-
TROYER,
        Consolidated-Plaintiffs-Appellants,

MICHAEL YEO,
        Consolidated-Plaintiff-Movant-Appellant,

PRETIUM GROUP, TIM KOSOWSKI, individually and on behalf of
all others similarly situated,
        Plaintiffs,

RANDALL DAMGAR, DENNIS P. SWEENEY,
MARTIN MAYER, DIANA GARCIA,
        Consolidated-Plaintiffs,

1

**ROBERT ALLAN QUARTERMAIN,**
**KENNETH C. McNAUGHTON,**
**PRETIUM RESOURCES INC.,**
          <u>**Defendants-Appellees**</u>,

**PETER ADRIAN JOHAN DE VISSER,**
          <u>**Consolidated-Defendant-Appellee**</u>,

**JOSEPH J. OVSENEK, JOHN SMITH, ROSS MITCHELL,**
**TOM S.Q. YIP, SILVER STANDARD RESOURCES INC.,**
          <u>**Defendants**</u>.
_____

**FOR DEFENDANTS-APPELLEES AND**
**CONSOLIDATED-DEFENDANT-APPELLEE:** Daniel J. Kramer (<u>with</u>
                                    William B. Michael and Neil
                                    P. Kelly <u>on the brief</u>),
                                    Paul, Weiss, Rifkind,
                                    Wharton & Garrison LLP, New
                                    York, NY.

**FOR PLAINTIFFS-APPELLANTS:**      JEREMY A. LIEBERMAN (<u>with</u>
                                    Michael Grunfeld <u>on the</u>
                                    <u>brief</u>), Pomerantz LLP, New
                                    York, NY; Laurence M.
                                    Rosen, The Rosen Law Firm,
                                    P.A., New York, NY.

Appeal from a judgment of the United States District Court for the Southern District of New York (Broderick, <u>J.</u>).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment of the district court is **AFFIRMED**.

Holders of stock in Pretium Resources, Inc. brought this putative class action in the United States District Court for the Southern District of New York (Broderick, <u>J.</u>), alleging that Pretium and three of its officers

(collectively "Pretium") violated Sections 10(b) and 20(a) of the Securities Exchange Act of 1934, as well as Rule 10b-5 promulgated thereunder.  See 15 U.S.C. §§ 78j(b), 78t(a); 17 C.F.R. § 240.10b-5.  On motion by Pretium, the district court dismissed the Second Consolidated Amended Class Action Complaint (the "complaint") with prejudice. We affirm that dismissal on de novo review.  See Employees' Ret. Sys. v. Blanford, 794 F.3d 297, 304 (2d Cir. 2015). We assume the parties' familiarity with the underlying facts, the procedural history, and the issues presented for review.

To prevail in this securities-fraud action, the plaintiffs would need to establish the existence of "(1) a material misrepresentation or omission by the defendant; (2) scienter; (3) a connection between the misrepresentation or omission and the purchase or sale of a security; (4) reliance upon the misrepresentation or omission; (5) economic loss; and (6) loss causation." Stoneridge Inv. Partners, LLC v. Scientific-Atlanta, 552 U.S. 148, 157 (2008).  At the motion-to-dismiss stage, the plaintiffs must contend with the heightened pleading requirements of both Federal Rule of Civil Procedure 9(b) and the Private Securities Litigation Reform Act, which together require plaintiffs to plead the circumstances purportedly constituting fraud with particularity.  The plaintiffs pleaded the facts underlying their claim as follows.  See Chambers v. Time Warner, Inc., 282 F.3d 147, 152 (2d Cir. 2002) ("[T]he complaint is deemed to include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference." (quoting Int'l Audiotext Network, Inc. v. Am. Tel. & Tel. Co., 62 F.3d 69, 72 (2d Cir. 1995) (per curiam))).

Pretium acquired a gold-mining site known as the Brucejack Project ("the Project") in 2010.  It then hired several independent experts to assist with various aspects of the Project's development.  Snowden Mining Industry Consultants ("Snowden"), retained to estimate the quantity of gold that the Project could produce, issued a report

3

("the Snowden Report") in 2012, recommending that Pretium mine a sample of the Project to confirm the estimate before undertaking full-scale mining. Pretium made the results of the Snowden Report public and hired Strathcona Mineral Services Ltd. ("Strathcona") to oversee and report on a sampling program. Pretium announced that it would release results from the program as they were received, but that Strathcona would report on the overall program at its conclusion. The program commenced in June 2013.

In a series of public filings and press releases issued over the next few months, Pretium reported favorable results from the sampling program and expressed continued faith in Snowden's estimates. One such press release announced the discovery of the "Cleopatra Vein," "an extreme grade mineralization deposit that had been projected [in] the [Snowden] Report." App'x at 124. Pretium disclosed very specific details concerning the Cleopatra Vein's location and narrow dimensions. It then explained that "[p]lanning [wa]s underway with [Strathcona] . . . to increase the portion of the . . . sample" that would be drawn from "the higher grade" area that included the Cleopatra Vein. Id. (first and third alterations in original) (internal quotation marks omitted). The same press release provided updated results from the sampling program, using italicized headers to distinguish the results attributable to the Cleopatra Vein from the results attributable to the rest of the sample. Subsequent press releases confirmed the sampling program's shift toward the Cleopatra Vein and indicated Pretium's continued confidence in Snowden's "projection of high-grade gold mineralized domains" in the Project. Id. at 165 (internal quotation marks and emphasis removed).

Pretium's October 9, 2013 press release announced that Strathcona was resigning prior to the completion of the sampling program and without issuing a report on it. In a press release issued roughly two weeks later, Pretium disclosed Strathcona's opinion that Pretium's previous public statements suggesting that Snowden's estimates

remained viable were "erroneous and misleading."  <u>Id.</u> at 125 (internal quotation marks and emphasis removed). Pretium's stock price declined by roughly 30% on the day of each October press release.  Three days after the second press release was issued, the plaintiffs commenced this securities-fraud action.

The gravamen of the plaintiffs' claim is that Pretium artificially inflated the value of its stock by making materially false and misleading statements about the sampling program.  The plaintiffs, however, fail to state a claim for securities fraud because none of the three Pretium statements (or sets of statements) alleged to be fraudulent actually constituted "a material misrepresentation or omission."  <u>Stoneridge Inv. Partners, LLC</u>, 552 U.S. at 157.  We address those three statements in turn.

**1.** The complaint alleges that Pretium defrauded investors by expressing continued faith in Snowden's estimates, notwithstanding--and without disclosing-- Strathcona's view that the sampling program was not bearing out those projections.  This claim fails because the complaint does not adequately plead that the Pretium statements at issue were false or misleading.  Contrary to the plaintiffs' contention, these were statements of Pretium's opinion, rather than assertions of purported fact.[1]  They are therefore subject to the standard set forth

---

[1] "[E]xpressions of optimism [and] projections about the future" are quintessential opinion statements.  <u>In re Int'l Bus. Machs. Corp. Sec. Litig.</u>, 163 F.3d 102, 107 (2d Cir. 1998).  Estimates, in particular, constitute a well-established species of opinion.  <u>See, e.g.</u>, <u>Fait v. Regions Fin. Corp.</u>, 655 F.3d 105, 111 (2d Cir. 2011) ("[E]stimate[s] . . . will vary depending on the particular methodology and assumptions used," rendering them "subjective.").

The plaintiffs' contention that the estimates at issue are not opinions is further belied by the record.  In a

in Omnicare, Inc. v. Laborers Dist. Council Constr. Indus. Pension Fund, 135 S.Ct. 1318 (2015), "for analyzing whether a statement of opinion" is false or misleading. Tongue v. Sanofi, 816 F.3d 199, 209 (2d Cir. 2016). "[M]eeting the [Omnicare] standard . . . is no small task for an investor." Id. at 210 (internal quotation marks and citation omitted).

Omnicare identified three ways in which a statement of opinion can be false or misleading: (1) "the speaker d[oes] not hold the belief . . . professed"; (2) the "fact[s] [] supplied" in support of the belief professed are "untrue"; or (3) the speaker "omits information" that "makes the statement misleading to a reasonable investor." Tongue, 816 F.3d at 210 (internal quotation marks and citation omitted). The plaintiffs fail to adequately allege any of these kinds of falsity.

As to the first kind, all the relevant allegations in the complaint suggest that, despite Strathcona's contrary opinion, Pretium believed that Snowden's estimates would prove accurate. The "opinions and findings" in the Snowden Report were "presum[ptively] . . . unbiased and fact-based," given Snowden's status as an independent expert. App'x at 141. While Strathcona's views were entitled to the same presumption, Strathcona's job was to "report on" the full sampling program, not to provide interim mineral estimates. Id. at 122. To the extent that Strathcona was to weigh in on Pretium's mineral estimates, it was to do so

public filing, Pretium specifically explained to investors that (1) any disclosure of figures for mineral resources or mineral reserves "that may be presented by us . . . are and will only be estimates"; (2) "[t]he estimating of mineral reserves and mineral resources is a subjective process that relies on the judgment of the persons preparing the estimates"; and (3) such "estimates are imprecise and depend, to a certain extent, upon analysis of drilling results and statistical inferences that may ultimately prove to be inaccurate." App'x at 397.

at the conclusion of the sampling program, "after compilation of all data." Id. at 467. For that reason, Pretium insisted that Strathcona's views were "premature," id. at 125, given that they were based on only "approximately 20% of the underground drilling results," id. at 146 (internal quotation marks omitted). Pretium also expressed concerns (echoed by Snowden) that aspects of the sampling program on which Strathconoa relied in forming its opinion were "flawed." Id. at 152 (internal quotation marks omitted).

These facts defeat an inference that Pretium *believed* Strathcona and therefore *disbelieved* its own assertions of confidence in Snowden's estimates. Accordingly, the plaintiffs fail to plead the first kind of falsity.

As to the second kind of falsity, often referred to as "objective falsity," see, e.g., Tongue, 816 F.3d at 208, the plaintiffs do not plausibly allege that any of the facts supplied by Pretium in support of its estimates were untrue; they allege merely that Pretium should have drawn different conclusions from those facts. Allegations of that sort do not give rise to a claim of objective falsity. See id. at 214 ("Plaintiffs' allegations regarding Defendants' stated opinion . . . [do] little more than [raise] a dispute about the proper interpretation of data, a dispute this Court [has] rejected as a basis for liability."). The record in this case illustrates why that is so.[2]

The plaintiffs' argument is primarily focused on the

---

[2] At the conclusion of the sampling program, Snowden actually *increased* its mineral estimates, casting doubt on Strathcona's reading of the initial results from the program. While this revised estimate was issued after the class period and therefore has no bearing on our holding, it illustrates why merely alleging that a statement of opinion was incorrect does not suffice to plead objective falsity.

7

third kind of falsity: they argue that Pretium's failure to disclose Strathcona's doubts about Snowden's estimates rendered Pretium's expressions of confidence in those estimates materially misleading.  In particular, the plaintiffs argue that they were led to believe incorrectly that Pretium's opinion statements "align[ed] with the information in [Pretium's] possession."  Omnicare, 135 S. Ct. at 1329.  This argument is unavailing.

"An opinion statement . . . is not [] misleading [simply because] an issuer knows, but fails to disclose, some fact cutting the other way."  Id.  This is true even when the "fact" cutting the other way is the contrary opinion of an expert or authority.  See Tongue, 816 F.3d at 212.  That is because "[r]easonable investors understand that opinions sometimes rest on a weighing of competing facts" and input.  Omnicare, 135 S. Ct. at 1329.

"[W]hether an omission makes an expression of opinion misleading always depends on context."  Id. at 1330.  "[A]n omission that renders misleading a statement of opinion when viewed in a vacuum may not do so once that statement is considered, as is appropriate, in a broader frame."  Id.  That broader frame includes "the customs and practices of the relevant industry."  Id.  Accordingly, we must consider the statements at issue "in light of all [] surrounding text, including hedges [and] disclaimers" and the context of an investment in a gold mine.  Id. at 1329–30; see also Kleinman v. Elan Corp., plc, 706 F.3d 145, 153 (2d Cir. 2013) ("Disclosure is required only when necessary to make statements made, in the light of the circumstances under which they were made, not misleading." (internal quotation marks, citations, and alteration omitted)).  Pretium's statements, viewed in context, were not misleading.

First, gold mining is a volatile industry and making an investment in a gold mine is therefore inherently risky.  This risk is part of the "broader frame" of the industry in which these plaintiffs invested when they purchased stock in Pretium and the Project.  See Omnicare, 135 S. Ct. at

8

1330. The nature of that risk is enhanced where, as here, the mine is still under development, the physical infrastructure is not fully in place, and the mine's developers do not yet have complete information about its economic viability. In recognition of those risks, Pretium emphasized the preliminary nature of its development of the Project by qualifying its press releases with a warning that any figures it disclosed would "only be estimates," resulting from a "subjective process that relies on [Pretium's] judgment" and "inferences that may ultimately prove to be inaccurate." App'x at 397.

Second, Strathcona was hired to "oversee" the "work required to be completed" prior to beginning excavation for the sampling program and to evaluate the data that the sampling program produced. Id. at 1519. It was not hired to give or evaluate interim reports. Accordingly, Pretium explained in advance of its statements that investors could "expect[]" to receive "*Strathcona's* report on the [sampling program]" at the program's conclusion, once "all data" had been "compil[ed]." Id. at 467 (emphasis added). Strathcona, however, left before it issued the report.

Pretium's disclaimers made manifest that its views were entirely its own, preliminary, and subject to a forthcoming independent audit. Additionally, Strathcona's opinions about other matters--including its concerns about the initial results of the sampling program or how those preliminary results compared to Snowden's report--were not relevant to the narrow purpose for which Pretium retained Strathcona. Pretium was therefore entitled to investigate and confirm that Strathcona's opinion about the preliminary findings from the sampling program was valid. See Omnicare, 135 S. Ct. at 1330 ("Investors do not, and are right not to, expect opinions contained in [official statements] to reflect baseless, off-the-cuff judgments.").

Although investors "[c]ertainly . . . would have been interested in knowing about [Strathcona's] feedback, and perhaps would have acted otherwise had the feedback been

9

disclosed," the securities laws do not "impose liability merely because an issuer failed to disclose information that ran counter to [the] opinion [it] expressed."  Tongue, 816 F.3d at 212.  Pretium was not under a duty to disclose Strathcona's opinions and plaintiffs therefore fail to plausibly allege a nondisclosure that "misle[d] in a manner that is actionable."[3]  Id. at 214.

**2.** The complaint alleges that Pretium defrauded investors by touting the results of the sampling program without disclosing that Pretium had skewed the program

---

[3] Nor do the plaintiffs plausibly allege that Pretium had a duty to disclose in its August 5, 2013 quarterly report "the uncertainty that the [] Project did not contain the quantities and/or grades of material" that Snowden had projected.  App'x at 135.  A company must describe in its quarterly reports "any known trends or uncertainties" that the company "reasonably expects will have a material . . . unfavorable impact on . . . revenues or income."  17 C.F.R. 229.303(a)(3)(ii) ("Item 303").  However, Item 303 applies only to "*known* trends or uncertainties."  Ind. Pub. Ret. Sys. v. SAIC, Inc., 818 F.3d 85, 95 (2d Cir. 2016) (emphasis in original) (internal quotation marks and citation omitted), cert. granted sub nom. Leidos, Inc. v. Ind. Pub. Ret. Sys., 137 S. Ct. 1395 (2017) (held in abeyance).  And the complaint does not plausibly allege that Pretium had "actual knowledge" of any defect in Snowden's estimates.  Id.
The complaint makes clear that Pretium did not deem Strathcona's preliminary doubts about those estimates credible.  Therefore, the complaint at most alleges that Pretium was "reckless[] or negligen[t]" in failing to recognize problems with the Snowden Report, and such allegations are insufficient to support a claim of securities fraud based on a violation of Item 303.  Id.

toward the narrow and unrepresentative Cleopatra Vein in order to yield more favorable data.  This claim fails because it was apparent from Pretium's disclosures that the Cleopatra Vein was not representative of the Project overall.

Pretium issued a press release to announce its discovery of the Cleopatra Vein, which it described as a site of "*extreme* grade mineralization."  App'x at 1550 (emphasis added).  Pretium even summarized the drilling results from the Cleopatra Vein and the rest of the sample in separately labeled charts, thereby emphasizing the Cleopatra Vein's atypical productivity.  As to the vein's purported narrowness, Pretium disclosed the details of its location and dimensions, even providing maps of the level plan and cross-sections of the vein itself.

Pretium also clearly publicized its "[p]lan[] . . . to increase the portion of the . . . sample" that would be drawn from the "higher grade" Cleopatra Vein.  Id. at 1551.  Successive press releases announced that plan, confirmed Pretium's execution of the plan, and stated Pretium's intention to continue following through.  It is therefore implausible that a reasonable investor would have been misled by Pretium's disclosures in the manner alleged in the complaint.

**3.** The complaint alleges that Pretium defrauded investors by stating that it was planning, *with Strathcona*, to increase the portion of the sample drawn from the Cleopatra Vein when, in fact, "Strathcona was *not* on board with [that] plan" to "skew" the sampling program.  Id. at 161 (emphasis added).  This claim fails because the plaintiffs do not plausibly allege that the purported misstatement was material.

A misstatement is material only if "there is a substantial likelihood that a reasonable shareholder would consider it important in deciding how to [act]."  Hutchison v. Deutsche Bank Sec. Inc., 647 F.3d 479, 485 (2d Cir.

11

2011) (alteration in original) (internal quotation marks and citation omitted).  It is unlikely that a reasonable shareholder would have considered Strathcona's participation in Pretium's plan "significant [to any] investment decision[]."  Ganino v. Citizens Utils. Co., 228 F.3d 154, 161 (2d Cir. 2000).  That is because the purported fact of Strathcona's participation did not "significantly alter[] the total mix of information made available" to investors about the plan and its consequences.  Hutchison, 647 F.3d at 485 (internal quotation marks and citation omitted).

Pretium's announcement made clear that the plan would skew the sampling program toward the atypically productive Cleopatra Vein.  The suggestion that Strathcona supported the plan in no way blunted that disclosure.  And Strathcona's actual view--that the plan would skew the program--would have merely duplicated, rather than "significantly altered," the mix of information before investors.  Id. (internal quotation marks and citation omitted).  Accordingly, the plaintiffs fail to plead the existence of a *material* misrepresentation.  See Local 134 IBEW Joint Pension Tr. v. JP Morgan Chase Co., 553 F.3d 187, 202 (2d Cir. 2009).

We have considered the plaintiffs' remaining arguments and find them to be without merit.  For the foregoing reasons, we **AFFIRM** the judgment of the district court.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk of Court

12