Appeal from a judgment (denominated order) of the Supreme Court, Monroe County (Thomas A. Stander, J.), entered November 26, 2012 in a declaratory judgment action. The judgment granted the motion of defendant Aspen Insurance UK Limited, c/o Aspen Specialty Insurance Management Company to dismiss plaintiffs complaint against it.
It is hereby ordered that the judgment so appealed from is reversed on the law without costs, the motion is denied, and the complaint is reinstated against defendant Aspen Insurance UK Limited, c/o Aspen Specialty Insurance Management Company.
Memorandum: Defendant Shane VanDerwall commenced the underlying negligence action against plaintiff and others seeking damages for injuries he sustained on October 20, 2008, during the course of his employment on a construction project. Plaintiff, the general contractor on the project, subcontracted with VanDerwall’s employer, defendant Hub-Langie Paving, Inc. (Hub-Langie), to perform paving work on the project. Pursuant to the subcontract, Hub-Langie agreed to defend and indemnify plaintiff for all claims arising out of Hub- Langie’s work. HubLangie also agreed to name plaintiff as an additional insured on its commercial general liability insurance policy, which it did by an endorsement to its policy with Aspen Insurance UK Limited, c/o Aspen Specialty Insurance Management Company (defend *1392 ant). The endorsement covered “any person or organization . . . when you and such person or organization have agreed in writing in a contract or agreement that such person or organization be added as an additional insured on your policy.”
It is undisputed that plaintiff did not receive notice of the accident until late December 2009 in a letter from VanDerwall’s attorney. On January 27, 2010, plaintiffs liability carrier sent a letter to Hub-Langie notifying it of VanDerwall’s “claim,” noting Hub- Langie’s contractual agreement to defend and indemnify plaintiff, and requesting that Hub-Langie put its own insurance carrier on notice to allow the carrier to conduct its own investigation. On February 9, 2010, Hub-Langie sent defendant a “General Liability Notice of Occurrence/Claim” form regarding VanDerwall’s alleged injury, with the January 2010 letter attached. By February 22, 2010, defendant had requested and received a copy of the contract between Hub-Langie and plaintiff containing the defense, indemnification and additional insured requirements. After VanDerwall commenced the underlying action on April 15, 2010, plaintiffs counsel demanded that defendant defend and indemnify it in the underlying action by letter dated May 27, 2010. Defendant disclaimed coverage to plaintiff on the basis of untimely notice by letter dated June 2, 2010.
Plaintiff thereafter commenced this declaratory judgment action seeking a declaration that defendant is obligated to provide insurance coverage to plaintiff in the underlying action. Defendant moved to dismiss the complaint against it pursuant to CPLR 3211 (a) (1) and (7), and Supreme Court granted the motion. We reverse, deny the motion, and reinstate the complaint against defendant.
It is well settled that, “[i]n determining a dispute over insurance coverage, we first look to the language of the policy” (Consolidated Edison Co. of N.Y. v Allstate Ins. Co., 98 NY2d 208, 221 [2002]). “As with any contract, unambiguous provisions of an insurance contract must be given their plain and ordinary meaning . . . , and the interpretation of such provisions is a question of law for the court” (White v Continental Cas. Co., 9 NY3d 264, 267 [2007]). “If the terms of a policy are ambiguous, however, any ambiguity must be construed in favor of the insured and against the insurer” (id.; see Christodoulides v First Unum Life Ins. Co., 96 AD3d 1603, 1604-1605 [2012]). Further, “[n]otice requirements are to be liberally construed in favor of the insured, with substantial, rather than strict, compliance being adequate” (Greenburgh Eleven Union Free School Dist. v National Union Fire Ins. Co. of Pittsburgh, PA, 304 AD2d 334, 335-336 [2003]).
*1393 Here, under the heading “Duties in The Event Of Occurrence, Offense, Claim Or Suit,” the policy provides that the insured “must see to it that we are notified as soon as practicable of an ‘occurrence’ or an offense which may result in a claim. To the extent possible, notice should include: (1) How, when and where the ‘occurrence’ or offense took place; (2) The names and addresses of any injured persons and witnesses; and (3) The nature and location of any injury or damage arising out of the ‘occurrence’ or offense” (emphasis added). The policy further provides that, “[i]f a claim is made or ‘suit’ is brought against any insured, you must: (1) Immediately record the specifics of the claim or ‘suit’ and the date received; and (2) notify [defendant] as soon as practicable. You must see to it that we receive written notice of the claim or ‘suit’ as soon as practicable” (emphasis added).
Initially, we conclude that the December 2009 letter was a notice of an “occurrence . . . which may result in a claim” and not a “claim” under the policy. The terms “occurrence,” “claim,” and “suit” are separately used in the policy, and thus each term must be “ ‘deemed to have some meaning’ ” (Bretton v Mutual of Omaha Ins. Co., 110 AD2d 46, 49 [1985], affd 66 NY2d 1020 [1985]; see generally American Ins. Co. v Fairchild Indus., Inc., 56 F3d 435, 439 [1995]). The policy defines “[o]ccurrence” as “an accident.” The term “[c]laim” is not defined in the policy, but such term has been interpreted to mean “ ‘an assertion of legally cognizable damage,’ ” i.e., “ ‘a type of demand that can be defended, settled and paid by the insurer’ ” (Matter of Reliance Ins. Co., 55 AD3d 43, 47 [2008], affd 12 NY3d 725 [2009]; see generally American Ins. Co., 56 F3d at 439). Here, the December 2009 letter “neither makes any demand for payment nor advises that legal action will be forthcoming” (Reliance Ins. Co., 55 AD3d at 44). Rather, the letter advised plaintiff that VanDerwall had retained an attorney in connection with personal injuries he had sustained during the course of his work on the construction project, requested that plaintiff forward the letter to its insurance carrier, and warned plaintiff that failure to notify its carrier could result in a denial of coverage and “personal responsibility for any obligations that may arise” from VanDerwall’s accident.
We further conclude that the January 2010 letter and form that Hub-Langie sent to defendant at plaintiffs request satisfied the insured’s duty under the policy to “see to it” that defendant was notified of the occurrence “as soon as practicable” (see United States Underwriters Ins. Co. v Falcon Constr. Corp., 2003 WL 22019429, *5, 2003 US Dist LEXIS 14817, *15 [SD NY *1394 2003]). Contrary to the court’s conclusion, the policy did not require that written notice of an occurrence come directly from plaintiff; it simply required that plaintiff “see to it” that defendant was “notified” (see id.; see also New York Tel. Co. v Travelers Cas. & Sur. Co. of Am., 280 AD2d 268, 268 [2001]). Moreover, to the extent that the phrase “see to it that we are notified” is ambiguous, that ambiguity must be construed in plaintiff’s favor (see White, 9 NY3d at 267). Inasmuch as the January 2010 letter constituted notice of an “occurrence,” we conclude that the May 2010 letter constituted notice of a “claim” or “suit” based upon VanDerwall’s April 15, 2010 commencement of the underlying action. We therefore agree with plaintiff that the court erred in dismissing the complaint against defendant inasmuch as the documentary evidence does not conclusively establish a defense to plaintiffs claim as a matter of law (see Beal Sav. Bank v Sommer, 8 NY3d 318, 324 [2007]; Leon v Martinez, 84 NY2d 83, 87-88 [1994]).
All concur except Lindley and Valentino, JJ., who dissent and vote to modify in accordance with the following memorandum.