**PEARSON CAPITAL PARTNERS LLC and Congress Builders LLC, Plaintiffs,**

v.

**JAMES RIVER INSURANCE COMPANY, Defendant.**

14–cv–4664 (VM)

United States District Court, S.D. New York.

Signed August 28, 2015

Agnieszka Anna Wilewicz, Ahmuty, Demers & McManus, Albertson, NY, Timothy Erin Delahunt, Kenney Shelton Liptak & Nowak, LLP, Buffalo, NY, for Plaintiffs.

Helmut Beron, Wilson, Elser, Moskowitz, Edelman & Dicker, New York, NY, for Defendant.

### DECISION AND ORDER

VICTOR MARRERO, United States District Judge

Plaintiffs Pearson Capital Partners LLC ("Pearson") and Congress Builders LLC ("Congress," collectively "Plaintiffs"), both New York domestic limited liability companies, brought this suit against James River Insurance Company ("James River"), a foreign corporation that issues insurance policies in New York State. Plaintiffs are defendants in a separate, underlying action captioned *Atley Gomes v. Pearson Capital Partners LLC, Congress Builders LLC, Rockledge Scaffold Corp., CRV Construction, CRV Precast Construction LLC individually and d/b/a CRV Construction, and Ro–Sal Plumbing & Heating, Inc.* (N.Y. Sup.Ct., Bronx Co., Index No. 301249/2013) (the "Underlying Action"), and now seek defense and indemnity from James River in connection with the Underlying Action.

Plaintiffs filed the complaint ("Complaint") in the instant action in state court, after which James River filed a Notice of Removal (Dkt. No. 1), removing the action to this Court.[1] James River then filed a Motion to Dismiss ("Motion" or "Mot.," Dkt. No. 11) pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure ("Rule 12(b)(6)"). Plaintiffs opposed ("Opposition" or "Opp'n," Dkt. No. 18), and James River replied ("Reply," Dkt. No. 19).

---

1. The Complaint is attached as Exhibit A to the Notice of Removal, and can be found at Dkt. No. 1–1.

By Order dated March 31, 2015, this Court denied the Motion, finding that the Complaint had adequately stated a claim for relief. ("March 31 Order," Dkt. No. 20.) This Decision and Order provides the findings, reasoning, and conclusions that form the basis for the March 31 Order.

## I. *FACTUAL BACKGROUND* [2]

Plaintiffs are defendants in the Underlying Action, which was brought by Atley Gomes ("Gomes") to recover damages for bodily injury he allegedly sustained on December 7, 2012 (the "December 7 Accident") and December 24, 2012 (the "December 24 Accident") while working in the course of his employment for MC & O Contracting, Inc. ("MC & O") at a construction project at 45–56 Pearson Street, Queens, New York (the "Site"). Pearson is the owner of the Site. Congress was engaged by Pearson as the general contractor for work at the Site.

By written contract in October 2012, Congress retained MC & O as a subcontractor to perform masonry work at the Site. Pursuant to its written contact with Congress, MC & O was obligated to procure additional coverage for Congress and Pearson under MC & O's liability insurance policies.

James River issued a commercial general liability policy (the "Policy") to MC & O for the period of August 15, 2012 to August 15, 2013. The Policy was in effect at the time of the accidents alleged by the Underlying Action to have occurred during

the course of Gomes's employment with MC & O, causing bodily injury to Gomes.

To date, Plaintiffs have been defended in connection with the Underlying Action under an insurance policy issued by Mt. Hawley Insurance Company ("Mt. Hawley"), and Mt. Hawley has engaged in multiple communications with James River on Plaintiffs' behalf. Mt. Hawley sent a letter to James River dated December 28, 2012 (the "December 28 Letter"), concerning the December 24 Accident (Opp'n Ex. 1.), as well as a letter dated January 16 (the "January 16 Letter") concerning the December 7 Accident (Opp'n Ex. 2).

The December 28 and January 16 Letters provided brief descriptions of the December 24 and December 7 Accidents, respectively. (Opp'n Exs. 1, 2.) Both Letters also described the contract between Congress and MC & O and informed James River that "[the claimant is an employee of [James River's] insured, ... MC & O." (*Id.*) Both letters were titled with the heading "RE: DEMAND FOR DEFENSE AND INDEMNIFICATION" in bold letters. (*Id.*) Finally, both letters concluded by stating,

In the event of a claim or lawsuit, demand is made upon James River Insurance Company and its insured to provide contractual indemnity and additional insured status to L & M Development Partners, Congress Builders LLC and the additional listed parties to the contract and to assume the defense and

---

**2.** Except where otherwise noted explicitly, the factual summary below is derived from the Complaint and "documents cited and relied upon or incorporated by reference in the complaint as the factual sources of the pleadings." *Chambers*, 282 F.3d at 152 (2d Cir. 2002); *see supra* Section I of this Opinion. The Court accepts the facts alleged in the Complaint as true for the purposes of ruling

on a motion to dismiss. *See Spool v. World Child Int'l Adoption Agency*, 520 F.3d 178, 180 (2d Cir.2008) (*citing GICC Capital Corp. v. Tech. Fin. Grp., Inc.*, 67 F.3d 463, 465 (2d Cir.1995)); *see also Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152 (2d Cir.2002). Except where specifically quoted, no further citation will be made to the Complaint or the documents included in it.

indemnity of any claim or lawsuit that may arise.

(*Id.* at 2.)

On January 18, James River sent a letter (the "Acknowledgement Letter") to Mt. Hawley, acknowledging receipt of the December 28 and January 16 Letters. (Opp'n Ex. 3.) The Acknowledgment Letter noted, "We understand ... that Mr. Gomes is allegedly an employee of MC & O." (*Id.* at 1.) The Acknowledgement Letter further stated,

> We are unaware of any liability claim or suit being pursued by Mr. Gomes. If you have information to the contrary, please provide any documentation of the same. At this time, we are unable to accept or deny your tender of this claim. However, we will be conducting an investigation into this matter, both from a liability and coverage aspect.

(*Id.* at 2.)

Having received no further communications from James River regarding coverage for the December 7 and December 24 Accidents, Plaintiffs then filed the Complaint in the instant action, seeking defense and indemnity from James River in connection with the Underlying Action.[3]

## II. *STANDARD OF REVIEW*

### A. *RULE 12(b)(6) MOTION TO DISMISS*

The Motion argues that the Complaint should be dismissed because it fails to state a claim for which relief can be granted under Rule 12(b)(6) of the Federal Rules of Civil Procedure.

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal,* 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) (*quoting Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)). This standard is met "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal,* 556 U.S. at 678, 129 S.Ct. 1937. A court should not dismiss a complaint for failure to state a claim if the factual allegations sufficiently "raise a right to relief above the speculative level." *Twombly,* 550 U.S. at 555, 127 S.Ct. 1955.

The task of a court in ruling on a motion to dismiss is to "assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof." *In re Initial Pub. Offering Sec. Litig.,* 383 F.Supp.2d 566, 574 (S.D.N.Y.2005) (internal quotation marks omitted). The court must accept all well-pleaded factual allegations in the complaint as true, and draw all reasonable inferences in the plaintiff's favor. *See Chambers v. Time Warner, Inc.,* 282 F.3d 147, 152 (2d Cir.2002).

## III. *CONSIDERATION OF EXHIBITS*

As a threshold matter, the Court must determine which of the materials in the record it may consider in adjudicating the

---

**3.** The Motion, Opposition, and Reply indicate that Plaintiffs (via Mt. Hawley) notified James River of the Complaint on the day it was filed (March 19, 2014). James River then sent Plaintiffs (again, via Mt. Hawley) letters dated the next day (March 20, 2014), denying coverage for the December 7 and December 24 Accidents. The Court takes note of these factual allegations to the extent that they demonstrate that the claims asserted in the instant action are not moot. However, these facts are otherwise not relevant to the adjudication of the Motion, as they concern matters outside the Complaint and occurring after the Complaint was filed.

Motion. In the case at hand, both Plaintiffs and James River (collectively, the "Parties") made submissions related to the Motion that included additional materials in the form of exhibits for the Court's review.

### A. *RULE 12(d) CONVERSION INTO MOTION FOR SUMMARY JUDGMENT*

When material "outside the complaint" is presented for consideration in adjudicating a 12(b)(6) motion to dismiss, a court is "afforded two options" by Rule 12(d) of the Federal Rules of Civil Procedure: the court may either (1) exclude the extrinsic documents from review, or (2) "convert the motion to one for summary judgment and give the parties an opportunity to conduct appropriate discovery and submit the additional supporting material contemplated by Rule 56" of the Federal Rules of Civil Procedure ("Rule 56"). *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 154 (2d Cir.2002). However, "[a]ny written instrument attached to [the complaint] as an exhibit or any statements or documents incorporated in it by reference," as well as any matters of which judicial notice may be taken, are deemed included in the complaint and may be considered without converting the motion to dismiss into a motion for summary judgment. *Id.* at 152 (*quoting Int'l Audiotext Network, Inc. v. Am. Tel. & Tel. Co.*, 62 F.3d 69, 72 (2d Cir.1995) (per curiam)); *see Chambers*, 282 F.3d at 153.

Additionally, "[e]ven where a document is not incorporated by reference, the court may nevertheless consider it where the complaint 'relies heavily upon its terms and effect,' which renders the document 'integral' to the complaint." *Chambers*, 282 F.3d at 153 (*quoting Int'l Audiotext*, 62 F.3d at 72). "A plaintiff's *reliance* on the terms and effect of a doc-

ument in drafting the complaint is a necessary prerequisite to the court's consideration of the document on a dismissal motion; mere notice or possession is not enough." *Chambers*, 282 F.3d at 153 (emphasis in original) (*citing Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 47–48 (2d Cir.1991)).

### B. *THE EXHIBITS*

Both Parties have submitted exhibits for the Court's review. First, James River Submitted a Declaration in Support of its Motion to Dismiss ("Decl. Supp.," Dkt. 10) and attached:

Exhibit A—The Complaint in the case at hand;

Exhibit B—The Complaint in the Underlying Action;

Exhibit C—The Amended Complaint in the Underlying Action;

Exhibit D—The James River Commercial Liability Policy No. 00054538–0issued by James River to MC & O Contracting, Inc. for the period [sic] August 15, 2012 to August 15, 2013 (the "Policy"); and

Exhibit E—"[T]he letter dated June 30, 2014 which was sent by e-mail and first class mail by [defense counsel] to [plaintiff counsel], pursuant to the Individual Practices of U.S.D.J. Victor Marrero at II.A." (Decl.Supp.1–2.)

(*See* Decl. Supp. at 1–2; Decl. Supp. Exs. A–E.)

Plaintiffs have attached the following five exhibits to their Opposition:

Exhibit 1—Letter from Mt. Hawley to James River dated December 28, 2012 (the "December 28 Letter"), regarding the December 24 Accident; and

Exhibit 2—Letter from Mt. Hawley to James River dated January 16, 2013 (the "January 16 Letter"), regarding the December 7 Accident; and

Exhibit 3—Letter from James River to Mt. Hawley dated January 18, 2013 (the "Acknowledgment Letter"), acknowledging receipt of the December 28 and January 16 Letters and stating its intent to begin an investigation under reservation of rights; and

Exhibit 4—Letter from James River to Mt. Hawley dated March 20, 2013 ("Denial Letter I"), denying coverage with regard to the December 7 Accident; and

Exhibit 5—Letter from James River to Mt. Hawley dated March 20, 2013 ("Denial Letter 2"), denying coverage with regard to the December 24 Accident.

(*See* Opp'n Exs. 1–5.)

Finally, James River has attached two additional exhibits to its Reply:

Exhibit A—Email from Mt. Hawley to James River dated March 19, 2013; and

Exhibit B—"Affirmation of Timothy Delahunt, counsel for Mt. Hawley, in 200 West End Ave. Condo et al. v. Mt. Hawley Ins. Co., Index No.."

(*See* Reply Exs. A, B.)

## C. *ANALYSIS*

■ The Court finds that all but five of the Exhibits submitted by the Parties are properly deemed included in the Complaint and are therefore appropriate to consider in adjudicating a motion to dismiss. Exhibit A to the Motion is the Complaint, and it is of course self-explanatory that the Court may consider the Complaint itself. *See, e.g., Ashcroft v. Iqbal,* 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009). The Court may also consider the complaint in the Underlying Action, Exhibit B to the Motion, which constitutes the claim for which the Complaint seeks insurance coverage; not only does the Complaint reference the Underlying Action, the Complaint also "relies heavily upon its terms and effect." *Chambers,* 282 F.3d at 153; *see generally* Compl.

■ The amended complaint in the Underlying Action, attached as Exhibit C to the Motion, was filed after the Complaint, and therefore could not have been "relied upon" by Plaintiffs in drafting the Complaint. However, it is appropriate to consider the amended complaint in the Underlying Action in adjudicating a motion to dismiss because the Court may take judicial notice of this document. Under Rule 201(b) of the Federal Rules of Evidence, a court may take judicial notice of "a fact that is not subject to reasonable dispute because it ... can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." *See Island Software & Computer Serv., Inc. v. Microsoft Corp.,* 413 F.3d 257, 261 (2d Cir.2005). Moreover, matters of which the Court takes judicial notice are not considered matters outside the pleadings; the Court may therefore consider them when adjudicating a motion to dismiss without converting the motion to dismiss into a motion for summary judgment. *Staehr v. Hartford Fin. Servs. Grp., Inc.,* 547 F.3d 406, 426 (2d Cir.2008). In particular, "courts routinely take judicial notice of documents filed in other courts ... not for the truth of the matters asserted in the other litigation, but rather to establish the fact of such litigation and related filings." *Kramer v. Time Warner Inc.,* 937 F.2d 767, 774 (2d Cir.1991). Accordingly, the

Court takes judicial notice of the amended complaint in the Underlying Action in order to establish the fact of such litigation.

 Also of vital importance to the Complaint—and similarly relied upon by Plaintiffs in drafting the Complaint and heavily referenced therein—is the Policy, which is attached as Exhibit D to the Motion and is the document from which James River's liability is alleged to arise. *See Chambers*, 282 F.3d at 152–53. Because the dispute between the Parties centers around whether the terms of the Policy provide coverage to Plaintiffs under the circumstances alleged, the Policy itself is clearly "'integral' to the complaint." *Chambers*, 282 F.3d at 153.

[14] The letters attached to the Opposition as Exhibits 1–3—the December 28 Letter, the January 16 Letter, and the Acknowledgement Letter—are all appropriate for consideration in adjudicating a motion to dismiss because they were relied upon by the Plaintiffs in drafting the Complaint and are referenced in the Complaint—albeit not as explicitly as are the complaint and amended complaint in the Underlying Action and the Policy. *See Chambers*, 282 F.3d at 153; Compl. These communications comprise the exchange, prior to initiation of this lawsuit, between Plaintiffs (via Mt. Hawley) and James River, in which Plaintiffs allege to have "duly demanded additional insured coverage from James River in connection with [the Underlying Action]," while James River "has refused to provide either Pearson or Congress with defense and indemnification in connection with [the Underlying Action]." (Compl.¶¶ 15–16.) Without Plaintiffs' communications with James River about the December 7 and December 24 Accidents and James River's initial refusal to defend and indemnify Plaintiffs, the dispute between the Parties would not exist. The Complaint thus

"reli[es] on the terms and effect" of the December 28 Letter, the January 16 Letter, and the Acknowledgment Letter, rendering those documents "integral" to the Complaint and appropriate for consideration in adjudicating a motion to dismiss. *Chambers*, 282 F.3d at 152–53.

 However, Exhibit E to the Motion (James River's premotion correspondence with Plaintiffs), Exhibits 4 and 5 to the Opposition (letters sent from James River to Plaintiffs, via Mt. Hawley, disclaiming coverage for the December 7 and 24 accidents), and Exhibit A to the Reply (an email sent from Plaintiffs, via Mt. Hawley, to James River, attaching the Complaint in the instant action), cannot properly be considered to be included in the Complaint. Whether or not relevant to the ultimate disposition of the case at hand, this correspondence was exchanged after the Complaint was filed. Plaintiffs thus could not have "reli[ed] on the terms and effect of [the] document in drafting the [Complaint]." *Chambers*, 282 F.3d at 153. These documents are likewise not incorporated by reference or otherwise mentioned in the Complaint. Thus, none of these exhibits may be considered in adjudicating the Motion.

 Finally, Exhibit B to the Reply is also not appropriate for consideration in ruling on a motion to dismiss. Exhibit B to the Reply constitutes an affirmation from Mt Hawley's counsel in support of summary judgment on an unrelated action. This document is irrelevant to the case at hand and was certainly not relied upon by Plaintiffs in drafting their Complaint. *Chambers*, 282 F.3d at 152–53.

As discussed above, when confronted with materials "outside the complaint" while adjudicating a Rule 12(b)(6) motion to dismiss—as the Court was here—the Court may either exclude those documents

from review, or convert the motion into a motion for summary judgment under Rule 56. *Chambers,* 282 F.3d at 154. After weighing these options, the Court, in the March 31 Order, declined to convert the Motion into a motion for summary judgment and instead adjudicated (and denied) the Motion as a motion to dismiss. *See* March 31 Order. In doing so, the Court excluded from its consideration the Motion's Exhibit E, the Opposition's Exhibits 4 and 5, and the Reply's Exhibits A and B.

## IV. DISCUSSION

### A. BODILY INJURY EXCLUSION

The Motion argues that Plaintiffs are not entitled to indemnification related to the December 7 and December 24 Accidents because of the Policy's "Employer's Liability Exclusion." (Mot. 6–8.) The Employer's Liability Exclusion states, in relevant part:

This insurance does not apply to any claim, suit, cost or expense arising out of "bodily injury" to:

a. Any employee of any insured arising out of and in the course of:

(1) Employment by any insured; or,

(2) Performing duties related to the conduct of any insured's business. . . .

(Mot. Ex. D, Dkt. No. 10–5 at 11.[4]) James River maintains that the claim asserted in the Underlying Action unambiguously falls within the Policy's Employer Liability Exclusion, and that James River is therefore not liable for defense or indemnification in connection with the Underlying Action. (Mot. 6–7 (citing *Monteleone v. Crow Construction Company,* 242

A.D.2d 135, 673 N.Y.S.2d 408 (N.Y.App. Div. 1st Dep't 1998) (finding that language nearly identical to the relevant language in the Policy clearly and unambiguously excluded coverage under an insurance policy)).) Moreover, argues James River, such policy exclusions apply equally to additional insureds (in this case, Pearson and Congress) as they do to any named insured (in this case, MC & O). (Mot. 6–7 (citing *Bayport Constr. Corp. v. BHS. Ins. Agency,* 117 A.D.3d 660, 985 N.Y.S.2d 143 (N.Y.App. Div.2d Dep't 2014); *Soho Plaza Corp. v. Birnbaum,* 108 A.D.3d 518, 969 N.Y.S.2d 96 (N.Y.App. Div. 2d Dep't 2013).) James River further argues that it also has no duty to defend Plaintiffs in connection with the Underlying Action, because, under the Policy, "[w]here there is no coverage . . . there is no duty to defend." (Mot. 8; Mot. Ex. D, Dkt. No. 10–5 at 9.[5])

Notably, Plaintiffs in their Opposition do not dispute that the December 7 and December 24 Accidents, which are the subject of the Underlying Action, fall squarely within the Employer's Liability Exclusion. (*See generally* Opp'n.) Rather, Plaintiffs assert, as discussed *supra* in Section IV(B) of this Decision and Order, that James River is liable because it had a duty to disclaim coverage and did not do so in a timely matter. (*Id.*)

The Court is persuaded that, as a matter of law, the claim asserted in the Underlying Action unambiguously falls within the Policy's Employer Liability Exclusion. Plaintiffs have therefore failed to allege facts that "allow[ ] the [C]ourt to draw the reasonable inference" that the terms of the Policy, on their face, obligate James River

---

4. For convenience and clarity, when referring to the Policy, the Court refers to the ECF page numbers, rather than to any page numbers within the document itself.

5. *See supra* note 4.

defend or indemnify Plaintiffs in connection with the Underlying Action. *Iqbal*, 556 U.S. at 678, 129 S.Ct. 1937. However, as discussed *infra*, New York law establishes liability on the part of an insurer to indemnify and defend an insured in certain circumstances even where a claim falls squarely within a policy exclusion.

## B. TIMELY DISCLAIMER

Plaintiffs claim that, irrespective of the Employer's Liability Exclusion, James River is liable to defend and indemnify Plaintiffs in conjunction with the Underlying Action because James River did not disclaim coverage in a timely manner after being notified of a claim as is required by New York Insurance Law Section 3420(d)(2) ("Section 3420(d)(2)"). (*See generally* Opp'n.)

■ Under New York law, "in cases involving death and bodily injury claims arising out of a New York accident and brought under a New York liability policy," Section 3420(d)(2) requires the insurer to provide a timely disclaimer for denials of coverage. *KeySpan Gas E. Corp. v. Munich Reins. Am., Inc.*, 23 N.Y.3d 583, 992 N.Y.S.2d 185, 15 N.E.3d 1194, 1198 (2014). Section 3420(d)(2) states:

> If under a liability policy delivered or issued for delivery in this state, an insurer shall disclaim liability or deny coverage for death or bodily injury arising out of a motor vehicle accident or any other type of accident occurring within this state, it shall give written notice as soon as is reasonably possible of such disclaimer of liability or denial of coverage to the insured and the injured person or any other claimant.

N.Y. Ins. Law § 3420. The statute "creates a heightened standard for disclaimer that 'depends merely on the passage of time rather than on the insurer's manifest-

ed intention to release a right as in waiver, or on prejudice to the insured,' " and " 'establishe[s] an absolute rule that unduly delayed disclaimer of liability or denial of coverage violates the rights of the insured [or] the injured party.' " *KeySpan Gas*, 15 N.E.3d at 1197–98 (*quoting Allstate Ins. Co. v. Gross*, 27 N.Y.2d 263, 317 N.Y.S.2d 309, 265 N.E.2d 736, 739 (1970)). Under Section 3420(d)(2), if an insurer fails to timely disclaim coverage, it is "precluded from later successfully disclaiming coverage." *NGM Ins. Co. v. Blakely Pumping, Inc.*, 593 F.3d 150, 153 (2d Cir.2010) (*citing Hartford Ins. Co. v. County of Nassau*, 46 N.Y.2d 1028, 416 N.Y.S.2d 539, 389 N.E.2d 1061 (1979)).

James River does not dispute that the Underlying Action seeks defense and indemnification pursuant to a liability policy issued in New York for bodily injury allegedly arising from an accident that occurred in New York, and therefore meets many of the criteria of Section 3420(d)(2). (*See generally* Reply.) James River argues instead that Section 3420(d)(2) is not applicable because: (1) James River was not notified of a claim triggering its duty to disclaim under Section 3420(d)(2) until the instant Complaint was filed; (2) Section 3420(d)(2) does not apply to claims between insurers, and Mt. Hawley—rather than Pearson and Congress—is the "real party in interest" in the case at hand; and (3) the claim in the Underlying Action falls outside the scope of the Policy's coverage, obviating the need to disclaim in a timely manner pursuant to Section 3420(d). The Court now reviews James River's arguments in turn.

### 1. Notice of a "Claim"

■ James River argues that it was not notified of a claim triggering its responsibility to disclaim "as soon as is reasonably possible" under Section 3420(d)(2)

until Plaintiffs filed the instant action. James River maintains that, while Section 3420(d)(2) applies only with respect to *claims* arising out of death or bodily injury, the December 28 and January 16 Letters notified James River merely of the alleged "occurrences" related to the Underlying Action, rather than of any "claims" for coverage. (*See Reply* 1–2.)

■ James River analogizes the facts in the case at hand to those in *Spoleta Construction LLC v. Aspen Insurance UK Ltd.*, in which the court held that an initial letter sent by the insured to the insurer was notice of an "occurrence," rather than a "claim," because it "neither ma[de] any demand for payment nor advise[d] that legal action w[ould] be forthcoming." 119 A.D.3d 1391, 991 N.Y.S.2d 183, 185 (N.Y.App. Div. 4th Dep't 2014), *appeal granted, reargument denied*, 122 A.D.3d 1346, 996 N.Y.S.2d 202 (N.Y. App. Div. 4th Dep't 2014). According to James River, similar to the initial letter in *Spoleta*, Plaintiffs' December 28 and January 16 Letters constituted notice only of "occurrences." (*See* Reply 1–2.) Consequently, James River argues, its obligations under Section 3420(d)(2) did not arise until it was notified of an actual claim—when the instant action was commenced.[6]

James River's reliance on *Spoleta* is misplaced. First, the *Spoleta* court made clear that its findings were anchored in the highly specific, detailed nature of the language in the insurance contract at issue in that case. The contractual language in *Spoleta* specifically stated,

> under the heading "Duties in The Event Of Occurrence, Offense, Claim Or Suit," . . . that the insured "must *see to it that we are notified as soon as practicable* of an '*occurrence*' or an offense which may result in a claim. To the extent possible, notice should include: (1) How, when and where the 'occurrence' or offense took place; (2) The names and addresses of any injured persons and witnesses; and (3) The nature and location of any injury or damage arising out of the 'occurrence' or offense" (emphasis added). The policy [at issue in *Spoleta*] further provide[d] that, "[i]f a *claim* is made or '*suit*' is brought against any insured, you must: (1) Immediately record the specifics of the claim or 'suit' and the date received; and (2) *notify [defendant] as soon as practicable. You must see to it that we receive written notice of the claim or 'suit' as soon as practicable*" (emphasis added).

*Spoleta*, 991 N.Y.S.2d at 185. The *Spoleta* court further noted that "[t]he terms 'occurrence,' 'claim,' and 'suit' are separately used in the policy, and thus each term must be deemed to have some meaning." *Id.*

James River argues that "[t]he terms and conditions of the [P]olicy make it clear

---

6. Asserting that it sent written notice disclaiming coverage the very next day after the instant Complaint was filed, James River further argues that it did disclaim coverage in a timely manner as soon as it was notified of a claim. However, that James River disclaimed coverage the day after the Complaint in this matter was filed has no bearing on the question of whether the December 28 and January 16 Letters constituted notice triggering James River's responsibilities under Section 3420(d)(2). The statute establishes an " 'absolute rule' " that applies regardless of " 'the

insurer's manifested intention to release a right as in a waiver.' " *KeySpan Gas*, 15 N.E.3d at 1197–98 (*quoting Gross*, 317 N.Y.S.2d 309, 265 N.E.2d at 739). Thus, even if James River *believed* in good faith that it had no duty to disclaim "as soon as is reasonably possible" under Section 3420(d)(2) prior to the filing of the instant action, such a belief—if mistaken—would not release it from liability. Furthermore, such facts fall outside the Complaint and are therefore not appropriate for consideration in adjudicating a motion to dismiss.

that James River has no affirmative obligation to its insureds until and unless a claim is made or a suit is filed." (Reply 2.) James River points to language in the Policy stating, "We will have the right and duty to defend the insured against any 'suit' seeking damages for 'bodily injury,'" and another section of the Policy that reads "We will pay, with respect to any claim we investigate or settle, or any 'suit' against an insured we defend . . . ." (Id.) However, this language does not separately use the term "occurrence" from the words "claim" or "suit," and does not specifically require that the insureds notify James River of specific facts related to a "claim" or "suit" as opposed to an "occurrence." (Id.)

"It is well settled that, '[i]n determining a dispute over insurance coverage, we first look to the language of the policy.'" Spoleta, 991 N.Y.S.2d at 184 (quoting Consolidated Edison Co. of N.Y. v. Allstate Ins. Co., 98 N.Y.2d 208, 746 N.Y.S.2d 622, 774 N.E.2d 687, 693 (2002)). Though James River wishes otherwise, unlike in Spoleta, nothing in the language of the Policy indicates that the December 28 and January 16 Letters sent by Plaintiffs, via Mt. Hawley, were not sufficient to provide proper notice under the Policy. Furthermore, to the extent that there might be any ambiguity regarding what sort of notice is required under the Policy, such ambiguity "'must be construed in favor of the insured and against the insurer.'" Spoleta, 991 N.Y.S.2d at 185 (quoting White v. Continental Cas. Co., 9 N.Y.3d 264, 848 N.Y.S.2d 603, 878 N.E.2d 1019, 1021 (2007)).

Moreover, it bears mention that although James River highlights the language in the December 28 and January 16 Letters stating that "[i]n the event of a claim or lawsuit, demand is made upon James River . . . ," the letters—unlike the initial letter in Spoleta—were also both titled with the heading "RE: DEMAND FOR DEFENSE AND INDEMNIFICATION" in bold letters. (Opp'n Exs. 1, 2.) Given that, under New York law, "'[n]otice requirements are to be liberally construed in favor of the insured, with substantial, rather than strict, compliance being adequate,'" the Court is not persuaded that the December 28 and January 16 Letters did not satisfy the Policy's notice provisions. Spoleta, 991 N.Y.S.2d at 185 (quoting Greenburgh Eleven Union Free Sch. Dist. v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA, 304 A.D.2d 334, 758 N.Y.S.2d 291, 293 (N.Y.App. Div. 1st Dep't 2003)). Indeed, even James River seems to have initially interpreted the December 28 and January 16 Letters as notifying it of a "claim," as James River wrote in the Acknowledgment Letter, "At this time, we are unable to accept or deny your tender of this claim." (Acknowledgment Letter 2 (emphasis added).)

Spoleta falls even further afield from the case at hand in that the facts in Spoleta did not in any way implicate Section 3420(d)(2). The statute was inapplicable to the claim at issue in Spoleta for other reasons, and the court parsed the letters sent by the insureds in order to determine whether the insureds had given timely notice to the insurer, rather than whether the insurer had provided timely notice of disclaimer to the insured. See generally Spoleta, 119 A.D.3d 1391, 991 N.Y.S.2d 183. As discussed supra, Section 3420(d)(2) establishes an "absolute rule" that "creates a heightened standard for disclaimer" outside—and often above—whatever may be required by the language of a given insurance policy. KeySpan Gas, 15 N.E.3d at 1197 (quotation marks omitted).

In determining whether disclaimer has been issued "as soon as rea-

sonably possible" under Section 3420(d)(2), it is "abundantly clear" under New York law that "'the timeliness of an insurer's disclaimer is measured *from the point in time when the insurer first learns of the grounds* for disclaimer of liability or denial of coverage.'" *George Campbell Painting v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA,* 92 A.D.3d 104, 937 N.Y.S.2d 164, 172 (App. Div. 1st Dep't 2012) (*quoting Matter of New York Cent. Mut. Fire Ins. Co. v. Aguirre,* 7 N.Y.3d 772, 820 N.Y.S.2d 848, 854 N.E.2d 146 (2006) (emphasis added) (internal quotation marks omitted)). In fact, "'a failure by the insurer to give such notice as soon as is reasonably possible *after it first learns of the accident or of grounds* for disclaimer of liability or denial of coverage, precludes effective disclaimer or denial.'" *George Campbell,* 937 N.Y.S.2d at 173 (*quoting Hartford,* 416 N.Y.S.2d 539, 389 N.E.2d at 1062 (emphasis added)). Regardless of the phrasing in the December 28 and January 16 Letters regarding "claims" and "demand," both letters did provide James River with information about the accidents at issue. (*See* Opp'n Ex. 1 at 1 ("This incident arose from an accident which occurred at the jobsite located at 45–56 Pearson Street New York, N.Y. [sic]. Congress Builders LLC is the GC and your insured is the Masonry subcontractor. The claimant is an employee of your insured, MC & O Contracting Inc. ("MC & O"). Mr. Gomes allegedly sustained injuries when he slipped and fell from scaffolding."); *Id.* Ex. 2 at 1 (same).)

The Court is therefore not persuaded that Plaintiffs have failed to allege facts giving rise to a reasonable inference that the December 28 and January 16 Letters constituted notice to James River triggering James River's duty to timely disclaim

under Section 3420(d).[7] *See Iqbal,* 556 U.S. at 678, 129 S.Ct. 1937.

### 2. Claims Between Insurers

██ James River argues that it was not required to give timely notice of disclaimer pursuant to Section 3420(d)(2) because, "[w]hile this action is brought in the names of Pearson and Congress, the real party in interest is Mt. Hawley," and the timely notice of disclaimer requirement of Section 3420(d)(2) does not apply to claims between insurers. (Reply 2.) According to James River, the instant action is a "disguised equitable contribution claim by Mt. Hawley, who is not entitled to the protections of [Section] 3420(d)." (Id. 3.)

██ James River is correct that Section 3420(d)(2) "does not apply to claims between insurers." *JT Magen v. Hartford Fire Ins. Co.,* 64 A.D.3d 266, 879 N.Y.S.2d 100, 101 (N.Y.App. Div. 1st Dep't 2009). *Accord Bovis Lend Lease LMB Inc. v. Royal Surplus Lines Ins. Co.,* 27 A.D.3d 84, 806 N.Y.S.2d 53, 59 (N.Y. App. Div. 1st Dep't 2005) ("[S]ection 3420 (d) was never intended to apply to another insurer.") The text of Section 3420(d) (2) specifically requires that the insurer "give written notice to the insured and the injured person or any other claimant." The phrase "any other claimant" refers to "any party that has *a claim against the insured arising under the policy,*" which by definition excludes other insurers of the insured. *Bovis,* 806 N.Y.S.2d at 58.

As support for its contention that Mt. Hawley is the "real party in interest," James River notes that: 1) [c]ounsel appearing in this matter on behalf of Pearson and Congress regularly appears as counsel

---

**7.** The Court notes that James River has not argued in the Motion that Plaintiffs have failed to allege facts demonstrating that disclaimer was untimely *even if* the December 28 and January 16 Letters *did* constitute notice triggering James River's obligations under Section 3420(d)(2). The Court therefore will not address this question.

for Mt. Hawley; (2) "[n]otice of the alleged occurrences was made by Mt. Hawley, not Pearson and Congress; and (3) Plaintiffs admit that they are being defended in the Underlying Action by Mt. Hawley, yet—in the Complaint—seek as damages "those amounts incurred . . . in connection with [P]laintiffs' defense in [the Underlying Action]." (Reply 3.) However, in *JT Magen*, the New York Appellate Division, First Department, found that there was no "factual or legal basis" for the theory that an insurer ("Travelers") was the "real party in interest" when Travelers sent a tender letter to the defendant insurer "on behalf of [the] plaintiff[s] . . ., seeking coverage for them with respect to the underlying personal injury action," and Travelers was not a party to the suit. 879 N.Y.S.2d at 104. *JT Magen* therefore suggests that the fact that Mt. Hawley—rather than Pearson and Congress—communicated with James River about the Underlying Action is not persuasive evidence that Mt. Hawley is the real party in interest. Furthermore, in the case at hand, as in *JT Magen*, Mt. Hawley is not a party to the litigation.

The Court finds that, in asserting that "the real party in interest is Mt. Hawley," James River has merely raised a factual issue appropriately reserved for the trier of fact. While James River has made some arguments suggesting that Mt. Hawley *could* be the real party in interest, none of these arguments are factually or legally conclusive. Furthermore, the facts asserted by Plaintiffs lend support to the conclusion that Plaintiffs actually are—as they portray—the parties in interest in this litigation. For the Court to conclude that Mt. Hawley is the real party in interest (or, even, that it is not) would entail a factual inquiry not appropriate at this stage of the litigation, and would necessitate "assay[ing] the weight of the evidence" rather than merely "assess[ing] the

legal feasibility of the [C]omplaint." *In re Initial Pub. Offering*, 383 F.Supp.2d at 574. Accepting all well-pleaded factual allegations in the Complaint as true and drawing all reasonable inferences in Plaintiffs' favor, as is required in adjudicating a motion to dismiss (*Chambers*, 282 F.3d at 152), the Court finds that Plaintiffs have alleged facts that support a reasonable inference that Plaintiffs are the real party in interest in the instant action.

### 3. *Claims Outside the Scope of Coverage*

James River argues that it was not required to provide timely notice of disclaimer pursuant to Section 3420(d)(2) because, "Where claims fall outside the scope of an insurance policy's coverage . . . timely disclaimer pursuant to [Section] 3420[ (d)(2) ] is unnecessary." (Reply 3.) James River asserts that the Policy only provides coverage to Plaintiffs pursuant to the "Additional Insured Endorsement" to the Policy, and that Plaintiffs have failed to make factual allegations bringing the accidents from which the Underlying Action arises within the scope of the Additional Insured Endorsement. (*Id.*) Therefore, James River argues, Plaintiffs have failed to establish that the "[P]olicy [wa]s triggered and that coverage attache[d]" related to the December 7 and December 24 [Accidents], and have consequently failed to show that James River was required to timely disclaim under Section 3420(d)(2). (*Id.*)

Under New York law, "[i]f the insurance carrier fails to disclaim coverage in a timely manner, it is precluded from later successfully disclaiming coverage." *NGM Ins. Co.*, 593 F.3d at 153. However,

[i]n the seminal case *Zappone v. Home Insurance Co.*, the New York Court of Appeals interpreted the statute as re-

quiring notice only for a "denial of liability predicated upon an exclusion set forth in a policy which, without the exclusion, would provide coverage for the liability in question." 55 N.Y.2d 131, 134, 447 N.Y.S.2d 911, 432 N.E.2d 783 (1982)... . In other words, notice is required where there is no coverage "by reason of exclusion." *Id.* at 137, 447 N.Y.S.2d 911, 432 N.E.2d 783 ... The *Zappone* court held that the statute does not apply, however, where "the policy as written could not have covered the liability in question under any circumstances," *id.* at 134, 447 N.Y.S.2d 911, 432 N.E.2d 783 ...; that is, notice is not required where there is no coverage "by reason of lack of inclusion," *id.* at 137, 447 N.Y.S.2d 911, 432 N.E.2d 783 ... (internal quotation marks omitted).

*Id.* Disclaimer is considered unnecessary when a claim falls outside the scope of a policy's definition of coverage because "in that situation, 'the insurance policy does not contemplate coverage in the first instance, and requiring payment of a claim upon failure to timely disclaim would create coverage where it never existed.'" *Britt v. Gen. Star Indem. Co.*, 494 Fed. Appx. 151, 153 (2d Cir.2012) (*quoting Worcester Ins. Co. v. Bettenhauser*, 95 N.Y.2d 185, 712 N.Y.S.2d 433, 734 N.E.2d 745, 747 (2000)).

The Additional Insured Endorsement in the instant action states, in relevant part, that additional insureds are covered

only with respect to liability for 'bodily injury,' 'property damage,' or 'personal and advertising injury' caused, in whole or in party by:

1. [MC & O's] acts or omissions; or

2. The acts or omissions of those acting on [MC & O's] behalf;

in the performance of [MC & O's] ongoing operations for the additional insured(s)... .

(Mot. Ex. D, Dkt. No. 10–4 at 30.[8])

The Court is not persuaded that Plaintiffs have failed to allege facts giving rise to a reasonable inference that the claims at issue fall within the scope of the Policy. James River avers that the "acts or omissions" language of the Additional Insured Endorsement requires allegations of "wrongdoing as respects MC & O," but that the complaint and amended complaint in the Underlying Action do not include such allegations. (Reply 3.) Furthermore, James River argues, Plaintiffs have not put forward any evidence "that suggests any liability caused by or on behalf of MC & O." (Reply 3.)

James River cites *Crespo v. City of New York*, 303 A.D.2d 166, 756 N.Y.S.2d 183 (N.Y.App. Div. 1st Dep't 2003), but *Crespo* is both distinguishable and, to some extent, outdated. In *Crespo*, the New York Appellate Division, First Department, held that an additional insured's right to indemnification could not be shown without first demonstrating that loss "was caused by negligence by [the named insured]." *Id.* at 185. The language of the additional insured endorsement in *Crespo* differed significantly from that in the case at hand, in that it provided coverage "only to the extent that [the additional insured] is held liable for [the named insured's] acts or omissions." *Id.* (internal quotation marks omitted).

Since *Crespo*, a number of cases in the First Department have shown that, under policies with additional insured endorsements extremely similar to the one in the case at hand, the existence of coverage does not require a showing of negligence or wrongdoing on the part of the named

---

8. *See supra* note 4.

insured. *See, e.g., Strauss Painting, Inc. v. Mt. Hawley Ins. Co.,* 105 A.D.3d 512, 963 N.Y.S.2d 197, 198 (N.Y.App. Div. 1st Dep't 2013) ("The additional insured endorsement speaks in terms of 'acts or omissions,' not negligence. Thus, in the unlikely event that it would be found that some nonnegligent act by [the named insured] caused the accident, the [additional insured] would still be entitled to coverage under the additional insured endorsement."), *aff'd as modified,* 24 N.Y.3d 578, 2 N.Y.S.3d 390, 26 N.E.3d 218 (N.Y.App. Div. 1st Dep't 2014), *reargument denied,* 24 N.Y.3d 1217, 4 N.Y.S.3d 599, 28 N.E.3d 34 (N.Y.App. Div. 1st Dep't 2015); *Nat'l Union Fire Ins. Co. of Pittsburgh, PA v. Greenwich Ins. Co,* 103 A.D.3d 473, 962 N.Y.S.2d 9, 10 (N.Y.App. Div. 1st Dep't 2013).

Furthermore, these newer cases have made clear that the burden of showing causation between the alleged "act or omission" and the injury caused, for the purpose of demonstrating coverage under an additional insured endorsement, is much lighter than the burden of showing causation in order to demonstrate negligence. For example, in *National Union,* a case in which the additional insured endorsement at issue was nearly identical to the one in the case at hand, the First Department noted that "the phrase 'caused by' 'does not materially differ from the phrase, "arising out of."'" 962 N.Y.S.2d at 10 (citing *W & W Glass Sys., Inc. v. Admiral Ins. Co.,* 91 A.D.3d 530, 937 N.Y.S.2d 28 (N.Y.App. Div. 1st Dep't 2012). Where "the underlying personal injury action arose out of an incident that occurred while [an individual] was acting on behalf of [the named insured] in the performance of its ongoing operations," the *National Union* court held that "the condition set forth in the additional insured endorsement was satisfied." Additionally, a court in this district, in applying New York law to the interpretation of an additional insured endorsement nearly identical to that in the case at hand, held that when an employee of the named insured was injured while "descending a ladder in the course of his work on [the named insured's] behalf for the [additional insureds] ... in the performance of [the named insured's] ongoing operations for the [additional insured] ... the condition required for coverage under the additional insured endorsement [wa]s met." *Liberty Mut. Ins. Co. v. Zurich Am. Ins. Co.,* No. 11–cv–9357, 2014 WL 1303595, at *5–7 (S.D.N.Y. Mar. 28, 2014). The Court found that no further showing of negligence, wrongdoing, or affirmative acts or omissions was required. *Id.*

Furthermore, the Court notes that in the months since this Court issued the March 31 Order, two new cases in the First Department have even further clarified that the facts in the case at hand may be sufficient to show that the claims at issue are covered under the Policy. In *Kel–Mar Designs, Inc. v. Harleysville Ins. Co. of N.Y.,* a case with facts extremely similar to the instant action and in which the language of the additional insured provision was nearly identical to that in the case at hand, the First Department held that

> [t]he loss at issue in the underlying action—a personal injury suffered by an ... employee [of the named insured] when he lost his footing on a stairway while working on a construction project—resulted, at least in part, from "the acts or omissions' of the [named insured] employee while performing his work (i.e., his loss of footing while on the stairway), regardless of whether the [named insured] employee was negligent or otherwise at fault for his mishap.

127 A.D.3d 662, 8 N.Y.S.3d 304, 305 (N.Y.App. Div. 1st Dep't 2015) (citing

*Strauss Painting,* 105 A.D.3d 512, 963 N.Y.S.2d 197; *W & W Glass,* 91 A.D.3d 530, 937 N.Y.S.2d 28). Comparably, in the instant action, the claims at issue involve a personal injury suffered by Gomes, an employee of named insured MC & O, when he allegedly slipped and fell from scaffolding while performing his work on behalf of MC & O in the course of MC & O's ongoing operations for Congress and Pearson. (*See* Opp'n Exs. 1, 2.)

Most recently, the First Department in *Burlington Insurance Company v. NYC Transit Authority* undertook a detailed discussion of the cases referenced in this Section of this Decision and Order, and reaffirmed that a showing of negligence or wrongful behavior on the part of the named insured is not required in order to demonstrate coverage under an additional insured endorsement worded very similarly to the one in the case at hand. 132 A.D.3d 127, 134–39, 14 N.Y.S.3d 377 (N.Y.App. Div. 1st Dep't 2015). The *Burlington* court, while finding *Crespo* distinguishable based upon the language in the additional insured endorsement, also stated that "[i]n any event, to the extent *Crespo* conflicts with this [c]ourt's more recent authority, we are obliged to follow the latter." *Id.,* at 137, 14 N.Y.S.3d 377.

■■■ While the case law from the First Department discussed in this Section of this Decision and Order has not been ruled upon by the New York Court of Appeals, federal courts are "bound to apply the law as interpreted by a state's intermediate appellate courts unless there is persuasive evidence that the state's highest court would reach a different conclusion." *V.S. v. Muhammad,* 595 F.3d 426, 432 (2d Cir. 2010). *See also Liberty Mut.,* 2014 WL 1303595, at *5. The Court finds no such evidence here.

Accordingly, the Court finds that Plaintiffs have pleaded factual allegations that

"allow[ ] the court to draw the reasonable inference" that the claims at issue fall within the scope of the Policy's coverage under the Additional Ensured Endorsement, and that James River was therefore required to give timely notice of disclaimer pursuant to Section 3420(d)(2). *Iqbal,* 556 U.S. at 678, 129 S.Ct. 1937.

## C. DUTY TO INDEMNIFY

Finally, James River argues that "[e]ven if it is ultimately determined that James River has some defense obligation with regard to the December 24, 2012 [A]ccident, based upon the timing of its valid disclaimer, it would still never have a duty to indemnify [P]laintiffs for that accident." (Reply 3.) James River claims that pursuant to recent case law from the New York Court of Appeals, James River would be able to rely on the Employer's Liability Exclusion with respect to indemnifying [P]laintiffs if found to have failed to timely disclaim. (*Id.*)

The Court notes that the cases cited to by James River—*K2 Inv. Grp., LLC v. Am. Guarantee & Liab. Ins. Co.,* 22 N.Y.3d 578, 983 N.Y.S.2d 761, 6 N.E.3d 1117 (2014), *reargument denied,* 23 N.Y.3d 939, 987 N.Y.S.2d 591, 10 N.E.3d 1146 (2014), and *Servidone Const. Corp. v. Sec. Ins. Co. of Hartford,* 64 N.Y.2d 419, 488 N.Y.S.2d 139, 477 N.E.2d 441 (1985), involve factual circumstances that are significantly distinguishable from those in the instant action. In *K2* and *Servidone,* insurers breached their duty to defend (and only their duty to defend), and were not consequently prohibited from later relying on a policy exclusion in order to avoid indemnification. *See generally id.* These cases do not contemplate, however, a lack of timely disclaimer pursuant to an exclusion under Section 3420(d)(2), which—as a general rule—"precludes denial of coverage based on [that] policy exclusion." *Britt,* 494 Fed.Appx. at 152–53.

Regardless, it is unnecessary for the Court to answer the hypothetical question of whether the Plaintiffs *might* be found to have failed to state a claim for relief as to indemnification *if* James River is ultimately determined to have some defense obligation pursuant to an untimely disclaimer. As discussed *supra*, outstanding issues of fact remain before a determination as to whether James River was required to timely disclaim pursuant to Section 3420(d)(2) can be made, let alone a determination as to whether—if James River *was* required to timely disclaim—it actually did. James River is welcome to raise this argument at a later date, should the Court ultimately find that James River had a duty to provide timely notice of disclaimer under Section 3420(d)(2), yet failed to do so.

## V. CONCLUSION

For the reasons stated above, accepting all well-pleaded factual allegations in the Complaint as true and drawing all inferences in Plaintiffs' favor, as is required in adjudicating a motion to dismiss (*Chambers*, 282 F.3d at 152), the Court finds that Plaintiffs have pleaded "sufficient factual matter ... to 'state a claim to relief that is plausible on its face'" (*Iqbal*, 556 U.S. at 678, 129 S.Ct. 1937 (*quoting Twombly*, 550 U.S. at 570, 127 S.Ct. 1955)).

## VI. ORDER

Accordingly, for the reasons stated above, it is hereby

**ORDERED** that the Court's Order dated March 31, 2015 (Dkt. No. 20) is amended to incorporate the discussion and decision set forth above and in other respects reaffirmed.

**SO ORDERED.**

